The MURMANILL CORPORATION, Appellant,

v.

Robert SIMKINS, Appellee.

No. 16620.

United States Court of Appeals Fifth Circuit.

Jan. 7, 1958.

Logan Ford, Cooper Blankenship, Burford, Ryburn, Hincks & Ford, Dallas, Tex., for appellant.

Royal H. Brin, Jr., H. W. Strasburger, Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from a summary judgment for the plaintiff entered on the

pleadings and affidavits in a suit on a letter contract,[1] presents the single question whether, as contended by appellant, there existed a genuine issue as to a material fact, and the case was not one for summary judgment, or whether, as found by the district judge and contended by appellee, the case presented merely a question of law, and the summary judgment was right.

It was appellant's position below, it is its position here that by the allegations in paragraph 3[2] of its answer, that

1. While the letters between Mann, Pres. of the defendant company, and the plaintiff, constituting the contract, went into considerable detail about the matters covered, only the directly pertinent parts of the letters need be set out here:

*From Mann's letter:* After stating plaintiff had acquired an option to purchase securities of James Heddon's Sons and that plaintiff was given an option to purchase 10 percent of them, the letter went on to say:

"It is our hope that the common stock value can be built up by good performance to justify this purchase."

*"Should for any reason there be an involuntary severance of your employment with the company prior to three years from the date you report for work,* we will cause James Heddon's Sons to pay you one year's salary of $25,000 in equal monthly installments over the 12 months following such separation.

"It is our intent that your taking the post of Executive Vice-President would put you in line for first consideration of moving into the Presidency after the immediate aims of the company have been realized. *You are familiar with what we want to achieve over the next two or three years and should these goals be met and should your performance measure up to all that we hope and expect from you,* there is nothing that we could see now that would cause anything other than this next logical development from taking place.

"Although we are not familiar with the current procedure on company automobiles, we assure you that we will cause the company to have available for your full time use a suitable car at company expense.

*"Again let me say how delighted we are with the prospects for the company with your being a very vital part of it.* I think it presents a fine opportunity for you and we will back up the company with an active, operating Board of Directors which will be energetic in the approval and implementation of all major policies." (Emphasis supplied.)

*From Simkins' letter:*

"In your letter to me you indicate that if my employment is involuntarily terminated prior to the expiration of three years, Murmanill will cause Heddon's to pay me one year's salary of $25,000 in twelve equal monthly installments following termination. Your letter also sets forth the terms of an agreement whereby the Murmanill Corporation grants me an option to purchase certain securities in James Heddon's Sons. The terms of my employment as Executive Vice-President of James Heddon's Sons and of my option from Murmanill to purchase certain securities of James Heddon's Sons in general are very satisfactory and I accept both employment as Executive Vice-President of James Heddon's Sons and the stock option granted by the Murmanill Corporation. I am happy to be aboard and look forward to taking up my duties at our meeting next Monday in Dowagiac.

"Finally, I am delighted with the opportunity at Heddon *and I will put forth every effort to meet the challenge to your satisfaction."* (Emphasis supplied.)

2. This alleged:

" * * * Aside from the duties expressly imposed upon or undertaken by plaintiff in his contract of employment, the law implies various obligations, covenants, undertakings, conditions and warranties by the employee running in favor of his employer, including among other things, that he will conduct himself with sobriety and such decency and propriety of deportment as not to work injury to the business of his employer and that he will not be guilty of neglect of business or other misconduct likely to be injurious to his employer's business. Plaintiff herein on numerous occasions has been guilty of neglect of duty, misconduct, intemperance, insobriety and intoxication in public places and in the presence of defendant's customers and has so conducted himself in their presence as to injure defendant's business and to render him unfit to serve as an executive of James Heddon's Sons. Plaintiff herein was warned on several occasions of his neglect of duty, intemperance and intoxication. Plaintiff, however, continued such conduct and such action on his part constituted a breach of the implied conditions, covenants and warranties of the employment contract."

plaintiff was discharged for cause and through his own fault and there has been no involuntary severance within the terms of the contract, and of par. 4, that the consideration for plaintiff's employment contract has failed, substantial and determinative issues of fact were raised.

We agree with appellant that this is so. Indeed, we think that, in accepting plaintiff's contention that the determination of the fact issues tendered by defendant was without bearing on the decision of the cause, the district judge completely overlooked the essential flesh and blood character of the facts alleged, and the issues legal and equitable to which they gave rise. All of appellee's contentions and arguments to the contrary proceed from, they are based upon, his ignoring or failing to see and understand that their acceptance leads inescapably to the conclusion that in consideration for defendant's promise, plaintiff did not in his turn promise to discharge his duties to the best of his ability, indeed did not promise anything. Such a conclusion is without support in fact, in law, and in morals.

That it is without support in fact, a mere reading of the letters, which, breathing as a whole mutual confidence and reliance upon the promise[3] each had made, contain specific assurances of a quid pro quo, will plainly show.

That it is without support in law is equally clear. Indeed, it is hornbook law that where there is no consideration, there is no contract, and that where the consideration is a promise for a promise, if a contract fails to contain an express counter-promise, one will be implied.

In Gulf, Mobile & Ohio R. Co. v. Illinois Central R. Co., D.C., 128 F.Supp. 311, at page 324, affirmed 5 Cir., 225 F. 2d 816, the principle is thus stated:

"A contracting party impliedly obligates himself to cooperate in the performance of his contract and the law will not permit him to take advantage of an obstacle to performance which he has created or which lies within his power to remove." Citing authorities, including Williston on Contracts, Rev.Ed.Sec. 1293 & 1293(a) Vol. 5. "Implied promise not to prevent or hinder performance."

That the contention pressed upon us by appellee is without support in morals is plainly seen when it is considered that to allow plaintiff to profit by his own wrong in doing the things he is charged with doing would result in a wholly unjust enrichment to him, in fact in constructive fraud.

"The clean hands maxim is cognate with numerous other principles which equity invokes in refusing relief to wrongdoers * * * a right cannot arise to anyone out of his own wrong; no one should be permitted to profit by, or take advantage of, his own wrong." 30 C.J.S. Equity § 94, pp. 477–478.

In consideration for its agreement to pay $25,000 to plaintiff, the defendant was entitled to receive the consideration that plaintiff would bring to the per-

---

3. That defendant's promise was made in reliance on plaintiff's obligation express and implied of full cooperation in the performance of the contract, is shown by these excerpts from Mann's letter:

"We are delighted about the future of Heddon's and feel so much better about its wonderful possibilities now that you are going to be with us, * * *. It is our hope that the common stock value can be built up by good performance to justify this purchase. * * *

"Again, let me say how delighted we are with the prospects for the company with your being a very vital part of it."

That the plaintiff understood the matter in the same way appears from these excerpts from his letter:

"The terms of my employment * * and of my option * * * are very satisfactory and I accept both * * *. I am happy to be aboard and look forward to taking up my duties. * * * *Finally, I am delighted with the opportunity at Heddon and I will put forth every effort to meet the challenge to your satisfaction.*" (Emphasis supplied.)

formance of his duties requiring leadership and executive ability the best that was in him. At the very least, he had agreed that he would not be guilty of misconduct, neglect of business, intemperance, insobriety, and intoxication, and that he would discharge his duties with such decency of deportment and propriety of conduct as not to work injury to his employer and in consequence to defendant. 35 Am.Jur., "Master and Servant", Sec. 40, p. 473, Sec. 82, at p. 514; Sec. 43, at p. 477.

■ Under defendant's allegations which for the purpose of this appeal must be accepted as true, plaintiff has not done one single act in consideration of defendant's promise to him, defendant has received nothing but injury, James Heddon's Sons, in which as the letters show the interest of both plaintiff and defendant were bound up, has received nothing but injury. Hence, if what defendant alleges is true, due to plaintiff's failure to perform, the consideration for the contract as a whole has failed, and it is unenforceable.

> "Want or failure of consideration is ground for cancellation or rescission of a contract, since as to a person who receives nothing whatever of value in exchange for property, the transaction operates as constructive or legal fraud." 10 Tex.Jur., "Contracts", Sec. 65, page 114.[4]

■ Appellee in effect agreeing that the defensive matters of failure of consideration, raised by appellant, would be highly material in a suit by an employee against his employer upon a simple contract of employment, argues: that the suit is not such; that it is upon a separate and distinct contract with a party other than the employer; and that the whole point of the agreement is to give the plaintiff protection and security that he would not have under the employment contract itself.

In so arguing, he seems to consider that the only question of importance *is the consideration moving to him, and that the consideration for the promise moving from him to the promisor is of no importance.*

This will not at all do. In emphasizing plaintiff's dependence upon the defendant's promise to give him the security that he needed, while overlooking entirely his counter promise, "I am delighted with the opportunity at Heddon's, and I will put forth every effort to meet the challenge to your satisfaction", plaintiff makes it clearer than even appellant's arguments have done, that plaintiff necessarily looks upon *defendant's promise to him as unsupported by any counter promise from him.*

His argument thus impales him on the horns of a dilemma from which there is no escape except a trial of the case on its merits and a refutation thereon of the charges defendant makes against him. For if there was no consideration for defendant's promise, if, in short, the promise of the defendant was wholly unilateral, the so-called contract is a mere nudum pactum, and the plaintiff cannot, therefore, recover on it.

If, on the other hand, plaintiff gave a promise in consideration for the promise and the defendant's charges against plaintiff are correct, the consideration has failed, and for that reason plaintiff may not recover. In either event, as the record stands before us with defendant's charges undenied, plaintiff was not entitled to recover, and he is, therefore, driven to the necessity of conceding .that his so-called contract was. without consideration or, if he claims that it was, of defending the suit on the facts.

The summary judgment is reversed and the cause is remanded for a trial on the merits and for further and not inconsistent proceedings.

---

**4.** Cf. Food Machinery Corporation v. Moon, Tex.Civ.App., 165 S.W.2d 773; Giumarra v. Harrington Heights, Inc., 33 N.J.Super. 178, 109 A.2d 695, affirmed 18 N.J. 548, 114 A.2d 720; Williston on Contracts, Rev.Ed. Vol. 3, Secs. 813, 814, 838 at p. 2346.