**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**ESTATE of Raymond W. ALBRIGHT, Deceased, et al., Respondents.**

No. 38, Docket 29594.

United States Court of Appeals Second Circuit.

Argued Oct. 5, 1965.

Decided Feb. 9, 1966.

Jonathan S. Cohen, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Alec A. Pandaleon, Attorneys, Dept. of Justice, for petitioner.

Charles S. Wilcox, Rochester, N. Y., for respondents.

Before WATERMAN, HAYS and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

The Commissioner of Internal Revenue petitions to review a decision of the Tax Court of the United States holding that payments to a beneficiary under two retirement annuity contracts, which met the requirements of Section 401(a),[1] paid when the prospective annuitant died prior to the effective annuity date, are only partially, and not wholly, includable in the decedent's gross estate for federal estate tax purposes. Albright v. Commissioner, 42 T.C. 643 (1964). We reverse on the ground that such payments were fully includable because they were wholly attributable to amounts contributed by the decedent to the cost of the contracts.

The decedent, Raymond W. Albright, was an executive of the Eastman Kodak Company when he died in February 1957 at the age of 62. Previously he had been employed by the B. F. Goodrich Company. In connection with each of these employments Mr. Albright, at the time of his death, was the prospective annuitant under a group annuity contract; and each contract constituted a "qualified" plan under Section 401(a) of the Code. The annuity contract arising out of the decedent's employment at Kodak had been issued by the Metropolitan Life Insurance Company. The second contract arising out of the decedent's former employment at the B. F. Goodrich Company had been issued by the Aetna Life Insurance Company.

The Metropolitan annuity contract and the Aetna annuity contract are, for the most part, similar in terms so far as their terms are relevant here. According to each contract Mr. Albright would begin to receive a life annuity on March 1, 1959 if he lived until then. Each annuity contract was financed by yearly contributions of Albright and his respective employer. At the time of his death Albright had paid $5,349 toward the cost of the Metropolitan contract, and Kodak had paid $81,316.34; he had contributed $2,909.19 toward the cost of the Aetna contract and the Goodrich Company had contributed $2,292.52. The Metropolitan contract provided that if Albright died prior to the date of the first annuity payment Metropolitan was to pay the named beneficiary a lump sum equal to the contributions Albright personally had made. As Mrs. Albright was the named beneficiary on the Metropolitan contract she received upon her husband's death a lump sum payment of $5,349 from Metropolitan. This sum exactly equalled her husband's contributions toward the cost of the contract. The terms setting forth the liability of the Aetna Life Insurance Company if Albright died prior to the date of the first annuity payment are more complicated.[2] It is clear, however, that Mrs.

1. Int.Rev.Code of 1954, § 401(a). All references to Code sections are to the Internal Revenue Code of 1954 unless specifically stated otherwise.

2. The Aetna contract provided in pertinent part:
    If the annuitant dies before the due date of the first annuity payment hereunder, the Insurance Company, upon re-

Albright was the beneficiary on the Aetna contract, clear that she received a lump sum payment of $4,728.40 upon her husband's death, and clear that this payment from Aetna consisted entirely of the contributions made by the decedent to the cost of the contract together with interest thereon.

The respondents, the duly qualified executors of the estate of Raymond W. Albright, included only $330.14 of the amount paid to Mrs. Albright under the Metropolitan contract and $2,644.45 of the amount paid to Mrs. Albright under the Aetna contract in the decedent's gross estate for purposes of computing the federal estate tax due. The Commissioner did not accept this and determined that the entire amounts received under these contracts were includable in the decedent's gross estate. The Tax Court overruled the Commissioner's determination, and held that there was no deficiency in federal estate tax due from the estate of Albright. The present petition to review this Tax Court decision was then filed.

The single issue before us is whether the respondents correctly excluded from the decedent's estate a proportionate part of the lump sum payments received by the decedent's beneficiary under the retirement annuity contracts, when these payments simply represented a refund of the decedent's contributions toward the cost of the contracts.[3]

We begin our resolution of this issue by examining Section 2033 of the 1954 Internal Revenue Code. Section 2033 states that, "[t]he value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." The annuity contract issued by Metropolitan clearly states that up to the time of Albright's death he could terminate his rights under the contract and could receive a refund of the amounts he had paid in toward the cost of the contract. Similarly, during his lifetime he could surrender the annuity contract issued by Aetna and could receive back a sum equal to the total premiums he had paid plus interest thereon. Thus, if Section 2033 of the Code applies, both lump sum payments are includable in their entirety in the decedent's gross estate because up to the time of the annuitant's death he could have surrendered the contracts and recovered the amounts he had paid in.[4]

The Estate argues, however, that Section 2039 of the Internal Revenue Code qualifies in part the broad inclusionary rule imposed in Section 2033 and that under Section 2039 it is clear that only a proportionate part of the lump sum payments received by Mrs. Albright need be included in her deceased husband's gross estate. We now turn to Section 2039 to learn whether it authorizes the exclusions from the gross estate that the executors made.

Prior to 1954 there was no provision in the Code dealing specifically

---

ceipt at its Home Office of due proof of the annuitant's death, will pay at its Home Office, to the beneficiary designated by the annuitant, the sum of Two Thousand Three Hundred Seventy-four and No One-hundredths Dollars ($2,374.00) with interest thereon at the rate of 3½% per annum, compounded annually, from January 1, 1944 to the January 1st immediately preceding the annuitant's death plus the amount of premiums paid hereon with interest thereon at 3½% per annum, compounded annually, on the first day of February of each year, such interest to be computed separately on each premium from the February 1st immediately following the date such premium was paid to the

February 1st immediately preceding the date of the annuitant's death.

3. The Tax Court also had before it the issue whether certain Kodak stock credited to decedent's deferred compensation account after his death was includable in his gross estate. That issue was decided adversely to the Commissioner on the authority of Barr v. Commissioner, 40 T.C. 227 (1963), acq. 1964-1 Cum.Bull. 4, and he does not here petition for review of that decision.

4. See Rosenberg v. United States, 309 F.2d 724 (7 Cir. 1962); Goodman v. Granger, 243 F.2d 264 (3 Cir.), cert. denied, 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47 (1957).

with the estate tax consequences of annuities. See Bittker, Federal Income, Estate & Gift Taxation, 1232 (3d ed. 1965). Lump sum payments similar to those received here by Mrs. Albright would have been includable in the decedent's gross estate only if they fell within the terms of one of the general estate tax provisions of the Code, such as the pre-1954 analogue of Section 2033. So, in order to regulate more specifically the estate tax consequences of various types of annuities Section 2039 was enacted.[5] In essence Section 2039 provides for two dissimilar types of treatment depending upon whether the annuity contract in question satisfies the requirements for privileged treatment contained in one of several other sections of the Code. Section 2039(a) states that the decedent's gross estate includes the value of an "annuity or other payment" (other than life insurance) receivable by a beneficiary who survives the decedent if, under the contract or agreement, the "annuity or other payment" was payable to the decedent, or he possessed a right to receive it, either alone or in conjunction with another, for his life or for any period not ascertainable without reference to his death, or for any period which did not in fact end before his death. Section 2039(b) goes on to provide that only that part of the value of the "an-

nuity or other payment" that is proportionate to that part of the total purchase price the decedent contributed is includable, but that any contribution by an employer toward the purchase price shall be attributed to the decedent-employee if made by reason of his employment. Section 2039(c), which is set out in pertinent part in the margin,[6] then proceeds to accord special treatment to, *inter alia*, an "annuity or other payment" received by a beneficiary under a qualified employee's retirement annuity contract. Section 2039(c) (2) first provides that such payments are excludable; it then promptly limits this provision by stating that, if the payments are to any extent attributable to contributions of the decedent, that proportion of the total payment received which equals the proportion of the decedent's contributions to the total contributions made is *not* excludable. It should be noted that subsection (c), unlike subsections (a) and (b), states that the employer's contributions are not to be attributed to the employee. The statutory design is clear: If employer and employee both contribute to the purchase price of a qualified retirement annuity contract and, after the employee's death prior to the effective annuity date, a designated beneficiary receives a payment that is attributable to the contributions made by both the em-

5. See 2 Mertens, Law of Federal Gift & Estate Taxation 399–400 (1959).

6. (c) Exemption of annuities under certain trusts and plans.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—

    (1) * * *
    (2) a retirement annuity contract purchased by an employer (and not by an employees' trust) pursuant to a plan which, at the time of decedent's separation from employment (by death or otherwise), or at the time of termination of the plan if earlier, was a plan described in section 403(a); or
    (3) * * *

If such amounts payable after the death of the decedent under a plan described

in paragraph (1) or (2) or under a contract described in paragraph (3) are attributable to any extent to payments or contributions made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bears to the total payments or contributions made. For purposes of this subsection, contributions or payments made by the decedent's employer or former employer under a trust or plan described in paragraph (1) or (2) shall not be considered to be contributed by the decedent. * * * For purposes of this subsection, contributions or payments on behalf of the decedent while he was an employee within the meaning of section 401(c) (1) made under a trust or plan described in paragraph (1) or (2) shall be considered to be contributions or payments made by the decedent.

ployer and the employee, only a proportionate part of the total payment so received is includable in the employee's gross estate, and the includable proportion is computed with reference to the apportionment formula set out in Section 2039(c).

The position of the Albright estate is quite simply that the lump sum payments received by Mrs. Albright are "other payments" within the meaning of Section 2039(c) because they were received under qualified annuity contracts, and, as these payments are attributable to contributions made by the decedent, the apportionment formula of Section 2039(c) requires that only a proportion of the payments be included in the decedent's gross estate.

█ The Commissioner first contends that the lump sum payments are not "other payments" within Section 2039(c) and thus are includable under Section 2033. According to the Commissioner, the language "annuity or other payment" means "annuity or other payment similar to an annuity," and he contends that since the lump sum payments received by Mrs. Albright have none of the hallmarks of an annuity they cannot pass this definitional test.[7] As we view this case, however, we need not decide this issue, for we hold that even if the payments received by Mrs. Albright are "other payments" within Section 2039(c) they are nevertheless includable in their entirety.

██ We should, of course, construe Section 2039(c) in a way that is consistent with the history and the spirit of federal estate tax legislation. We believe we best comply with this requirement if we hold that when Congress enacted Section 2039 it intended to continue the pre-existing rules that frequently required the inclusion in a decedent's gross estate of payments received by the decedent's beneficiary under an annuity contract if the payments were attributable to the decedent's contributions to the cost of the contract.[8] True, the applicable legislative history does not affirmatively establish that this was the intent of Congress; but neither does it contain any indication that Congress intended to deviate from the pre-1954 rules that frequently required the inclusion of such payments, and this silence suggests to us that Congress intended no such change. This view of Section 2039(c) means that the apportionment formula contained therein is *only* applicable in situations in which the decedent's beneficiary receives a payment that is attributable to the contributions of both employer and employee. In such a situation the purpose of apportionment would be to insure that only the proportionate part of this payment that reflects the proportion the decedent-employee's contributions bore to the contributions of both employee and employer, was included. In the present case, however, the payments received by Mrs. Albright were solely attributable to the decedent's contributions to the two contracts.[9] Consequently, the apportionment formula set out in Section 2039(c) is inapplicable, and as the payments Mrs. Albright received would have been fully includable under pre-1954 Code law,[10] they are fully includable here.

Reversed.

---

7. The Commissioner argues that an annuity contract or a plan providing for payments "similar to an annuity" necessarily involves a gamble against the contingency of death and that no such gamble inheres in the contractual obligation of an insurance company to pay over to a designated beneficiary an amount equal to what the decedent had paid in if the prospective annuitant dies before the effective date of the contract.

8. Prior to the enactment of the 1954 Code such payments frequently, although not invariably, were includable in the gross estate. See 2 Mertens, Law of Federal Gift & Estate Taxation 399–400 (1959).

9. The amount paid under the Metropolitan contract exactly equalled the decedent's total cost. The Aetna payment also included interest on the decedent's total contributions, but this does not mean that this payment was other than solely attributable to the contributions by the decedent.

10. See cases cited note 4 supra.