ESTATE OF BERNARD L. PORTER, DECEASED, RUTH R. PORTER, ALEXANDER H. PORTER, AND SAUL A. SEDER, ADMINISTRATORS D/B/N C/T/A, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1397–68.   Filed May 25, 1970.

---

*J. Robert Seder*, for the petitioners.
*Richard K. Seltzer*, for the respondent.

Scott, *Judge:* The Commissioner determined a deficiency in the Federal estate tax of the Estate of Bernard L. Porter, deceased, in the amount of $12,041.89. Petitioners, the administrators of the estate, all were residents of Worcester, Mass., at the date of the filing of the petition in this case. The estate tax return was filed with the district director of internal revenue at Boston, Mass.

The issues presented for decision are:

(1) Whether certain contracts between the decedent and his employers gave rise to an interest in property which was transferred by decedent under such circumstances as to cause it to be includable in his estate under section 2035, 2036, or 2038, I.R.C. 1954,[1] and if not, whether these contracts gave rise to an interest in property includable in decedent's estate under section 2033.

(2) The value, if any, of the interest to be included if any interest is includable in the decedent's estate.

The facts have been stipulated. The stipulation of facts and exhibits thereto are incorporated herein by this reference.

Decedent died testate on February 16, 1964. Decedent and his two brothers had owned all of the stock of Oxford Mills, Inc., and Quabbin Spinners, Inc., from prior to February 3, 1955, and these two corporations had owned all the stock of Fiber Processing Co., Inc., from the date of Fiber's incorporation in 1961. Decedent and his two brothers also constituted the board of directors of each corporation during these same periods of time. Decedent was continuously employed by Oxford Mills, Inc., from its incorporation in 1935 and by Quabbin Spinners, Inc., from its incorporation in 1946 and by Fiber Processing Co., Inc., from the date of its incorporation until his death.

On January 29, 1964, each of the corporations, by unanimous action of their respective boards of directors, entered into identical agreements with the decedent which provided in pertinent part as follows:

---

[1] All references are to the Internal Revenue Code of 1954.

The Employee is employed by the Company and is active in the day to day management of the Company. The Company wishes to assure itself of the continued services, advice, and experience of the Employee. The Company wishes, as an inducement to the Employee to remain in the Company's employ, to make provisions for the Employee's family in the event of the Employee's death while in the employ of the Company.

Now, THEREFORE, in consideration of the premises, and in consideration of One Dollar ($1.00) paid by each party to the other, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. Upon the decease of the Employee and if the Employee was in the employ of the Company at the time of his decease, the Company shall pay to the widow of the Employee a sum of money equal to twice the total compensation, including salary, bonuses, and commissions, received by the Employee from the Company in the fiscal year next preceding the fiscal year in which the Employe deceased, said sum of money to be payable in One-Hundred and twenty (120) equal installments, the first such installment to be paid on the first day of the month immediately following the month in which the Employee deceased, and the remaining installments to be paid on the first day of each succeeding month thereafter until all 120 installments have been paid in full.

2. In the event that the Employee should decease and leave no widow surviving or in the event that the Employee should decease leaving a widow surviving, but said widow should decease prior to all of the installments having been paid as set forth above, then the said installments shall be paid or continued to be paid to the living children and living issue of deceased children of the Employee as follows: * * * If at any time the said deceased Employee shall have no widow, children, or other issue who survive him and who are living at the time the equal installment is to be paid, no further payments shall be made pursuant to this Agreement.

3. In the event that the Company is in default of the payment of any two equal installments hereunder, all of the unpaid installments hereunder shall immediately become due and payable without notice or demand of any kind. All unpaid installments shall similarly become due and payable without notice or demand of any kind in the event of the dissolution, termination, insolvency, cessation by the Company of operations as a going concern, bankruptcy, receivership, or an assignment for the benefit of the creditors by the Company.

4. This agreement shall be binding upon and inure to the benefit of the parties, their successors, heirs, executors, administrators or other legal representatives. As used in this Agreement, the term successor shall include, but not be limited to, any person, firm, corporation or other business entity, which at any time, and from time to time, whether by merger, consolidation, purchase or otherwise acquired all or substantially all of the assets or business of the Company.

5. This Agreement may only be terminated, altered or amended with the written consent of all of the parties hereto.

Identical agreements were also entered into by each corporation with each of the other two directors who were also employees. These agreements were intended to supplant other agreements previously executed by the same parties. The prior agreements between each of the three director-stockholders and Oxford Mills, Inc., and Quabbin Spinners, Inc., were executed on February 3, 1955, and the prior agreement of each director-stockholder with Fiber Processing Co., Inc., was executed on December 27, 1963. Each of these prior agreements was identical and provided in part as follows:

WHEREAS, the Employee is employed by the Corporation, and through his efforts the Corporation's business has been maintained and improved, and

WHEREAS, the Corporation wishes to retain the services of the Employee and to offer an inducement to remain in its employ rather than to enter the employment of competing companies and to make provisions for his family in the event of death while in the service of the Corporation,

Now THEREFORE, in consideration of the premises, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

In the event of death of the Employee, while employed by the Corporation, the Corporation shall pay to his widow, if living, or if not, to his surviving children, for a period of six (6) months after his death the same salary he was receiving at the time of his death; thereafter for a period of six (6) months seventy-five per cent (75%) of the salary he was receiving at the time of his death, and for a period of two (2) years thereafter fifty per cent (50%) of the salary he was receiving at the time of his death.

In the event of bankruptcy or the making of an assignment for the benefit of creditors by the Corporation, the within obligation on the part of the Corporation to provide payment to the widow or children of the Employee shall cease.

In the event the Employee leaves the employ of the Corporation or his employment is discontinued by the Corporation, this agreement shall terminate.

It is the intention of the Corporation to continue this agreement indefinitely.

These prior agreements were canceled by unanimous action of the board of directors of each corporation on January 29, 1964.

At all times while employed by each of the corporations, and irrespective of any benefits to be paid upon his death, the decedent's compensation, consisting of salary, bonuses, and commissions, was fair, reasonable, and adequate. During his employment by each of the three corporations, decedent was an employee at the will of the corporation and at no time was he a party to an employment contract with any of them.

By appointment made prior to January 29, 1964, upon recommendation of his physician, decedent entered a hospital to undergo surgery for the removal of gallstones on January 30, 1964. The estate tax return filed on behalf of the estate of decedent shows decedent's date of birth as July 24, 1913, the cause of his death as acute myocardial infarction, and the length of his last illness as about 4 months.

Decedent and each of his brothers were married and had children prior to February 5, 1955.

The commuted value of the payments to be received by decedent's spouse and children on account of the three contracts is the sum of $83,162. No amount was included in decedent's estate on the estate tax return for the value of these contracts or payments.

Respondent in his notice of deficiency increased the taxable estate as reported in the return by the amount $83,162 designated as "Other miscellaneous property" explaining the addition as follows:

It is determined that the proceeds payable to the decedent's surviving spouse by virtue of three separate agreements entered into by the decedent and Fiber

Processing Co., Inc., Quabbin Spinners Incorporated and Oxford Mills, Inc. on January 29, 1964 with a total value of $83,162, are includible in the decedent's gross estate for Federal tax purposes. * * *

Petitioners contend that at no time did decedent ever have or transfer an interest in property as a result of the agreements with the three corporations and that therefore there is nothing to be included in decedent's gross estate because of these agreements under any section of the Internal Revenue Code. In the alternative petitioners contend that if decedent transferred an interest in property and the value of the property. so transferred is includable in decedent's gross estate, no tax is due on account thereof because the value of the transfer is zero.

Respondent contends that decedent by entering into the three agreements providing for payments to his widow or issue made transfers of property and that the property so transferred is includable in decedent's estate under section 2035, 2036, or 2038, I.R.C. 1954. In the alternative respondent contends that if we should find no transfer of property was made by the agreements, the property rights created by the agreements were held by decedent at the time of his death and therefore the value of the payments to be made under the contracts to decedent's widow and issue is includable in decedent's estate under section 2033.

Since sections 2035, 2036, and 2038 all are applicable only to property which is transferred by a decedent during his lifetime, the first question to be decided is whether in fact decedent made a transfer of property when he entered into the contracts with the three corporations on January 29, 1964. It has long been settled that a "transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another" is a transfer by decedent of property. *Chase Nat. Bank* v. *United States*, 278 U.S. 327 (1929). The Court stated in that case at page 337:

Sec. 402 (c) taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, or that the measure of the tax would be the cost and not the value or proceeds at the time of death. * * *

While the principle that a decedent who furnishes the consideration for the payment by another upon his death to the beneficiary designated by him has made a transfer of property as that term is used in the estate tax law has long been accepted, there has been much litigation concerning whether various arrangements came within the concept of a transfer procured by consideration furnished by a decedent. It was early held that mere hopes or expectancies on the part of an employee that his employer would upon his death pay benefits to his

widow or children was not such a transfer. *Dimock* v. *Corwin*, 19 F. Supp. 56 (E.D. N.Y. 1936), affirmed on other issues 99 F. 2d 799 (C.A. 2, 1938), affd. 306 U.S. 363 (1939). The rationale of this and similar cases is that where there is no binding obligation on the employer to make the payments but rather the payments are voluntarily made, no property right existed prior to the decedent's death for him to transfer. On the other hand, where an employee has a right to have payments made to him but elects instead to have a part of such payments made to his widow or children after his death, this Court and other courts have held that a transfer of property has been made by the decedent. Typical of this type of case is *Adeline S. Davis*, 27 T.C. 378 (1956), in which we held that an employee who agreed to have his employer pay to him a reduced annuity and after his death to pay an annuity in a lesser amount to his widow, made a transfer of property to his widow. The fact that no payments were made for either annuity by the employee himself was not considered controlling since the services of the employee furnished the consideration for payments for the annuities made by the employer. In *Estate of William L. Nevin*, 11 T.C. 59 (1948), we held that a decedent's agreement to resign his position was consideration for his corporate employer's agreement to pay an annuity to him and to his wife if she survived him and that decedent having furnished the consideration for the payment to his widow had made a transfer of property to her as that term is used in the estate tax law. In the *Nevin* case the consideration for both the annuity to be paid to decedent as well as the annuity to be paid to decedent's widow was the agreement of decedent to resign a position which he had a right to continue to occupy.

In *Estate of Eugene F. Saxton*, 12 T.C. 569, 575 (1949), we concluded that the payments there made to a widow were voluntary payments by the decedent's employer, but suggested that had there been a binding obligation on decedent's employer to pay the annuity to decedent's widow which was created by negotiations between the employer and the decedent and which the decedent in effect accepted in lieu of additional compensation to himself, a transfer of property might have occurred. We pointed out that under such assumed circumstances the agreement between the employer and the decedent would, in effect, be the equivalent of the employee's agreeing to accept the promise of his employer to pay an annuity to his widow as additional compensation for the services he was agreeing to render to his employer. The *Davis* and *Saxton* cases both recognize that a binding contract entered into between an employer and an employee, through negotiations, for the employer to make payments to a survivor of the employee after the employee's death, is in substance no different from an agreement whereby an employer agrees to pay a stated salary to an

employee, and in return for the employee's returning a portion thereof, to pay an annuity to the employee's widow or children.

Following the rationale of such cases as *Estate of William L. Nevin, supra,* and *Adeline S. Davis, supra,* the U.S. District Court for the District of Massachusetts in *Worthen* v. *United States,* 192 F. Supp. 727 (D. Mass. 1961), held that a transfer of property within the meaning of the estate tax laws had occurred where there existed a contract between an employee and his employer, quite similar to the contracts in the instant case, to pay stated amounts to the employee's widow after the employee's death. In *Rosenberg* v. *United States,* 309 F. 2d 724, 727 (C.A. 7, 1962), it was likewise recognized that "services rendered, or to be rendered," may furnish the consideration for an enforceable contract of an employer to make payments to a survivor of an employee.

Petitioners contend that the instant case is distinguishable from the numerous cases finding a transfer of property to have occurred under comparable facts because under the laws of Massachusetts the contracts between the decedent and the three corporations were unenforceable. Petitioners contend that even though the *Worthen* case involved a Massachusetts contract, the parties had stipulated that the contract was enforceable, which fact distinguishes that case from the instant case.

Since many cases recognize that for a transfer of property to occur, under circumstances comparable to those in the instant case, the decedent must have procured a transfer by another to his survivor under an enforceable contract, it is necessary to determine whether the contracts here involved were enforceable under the law of the State of Massachusetts. Petitioners first argue that the fact that under the agreements decedent had to be in the employ of the corporations at the date of his death for the payments to be made causes no enforceable agreement to exist. Petitioners do not suggest that the corporations might have discharged decedent without cause for the purpose of avoiding the contracts. However, if there is any implied suggestion in petitioners' argument that this might be so, it is not supported by the law of Massachusetts.

The provision that the payments should be made to decedent's widow upon his decease if he "was in the employ of the Company at the time of his decease," must be read in the light of the provision of each contract to the effect that the contract may be terminated only with the written consent of all parties. Since decedent was an employee at will, he was subject to being discharged by his employer. However, under the law of Massachusetts, if he were discharged without cause his employer would not be relieved of the obligation of the contract since a corporation cannot avoid such an obligation by its own wrongful act.

*Patton* v. *Babson Statistical Organization*, 259 Mass. 424, 156 N.E. 534 (1927) ; *Ravage* v. *Johnson*, 316 Mass. 558, 56 N.E. 2d 25 (1944). See also *Karcz* v. *Luther Manufacturing Co.*, 338 Mass. 313, 155 N.E. 2d 441, 447 (1959). The theory underlying the holding that a party may not be excused from performance of a contract because of his own wrongful action is as stated in *Grad* v. *Roberts*, 248 N.Y.S. 2d 633, 198 N.E. 2d 26 (1964), that "in every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." For Federal and Massachusetts cases holding to this effect see *Murmanill Corporation* v. *Simkins*, 251 F. 2d 33 (C.A. 5, 1958) ; *Bartlett* v. *Mystic River Corp.*, 151 Mass. 433, 24 N.E. 780 (1890) ; and *Shaw* v. *Harding*, 306 Mass. 441, 28 N.E. 2d 469 (1940).

While petitioners do not contend that the contracts could be made unenforceable by the wrongful act of any of the corporations in discharging decedent without cause, they do contend that the fact that decedent had to be in the companies' employ at the date of his death for the amounts to be paid to his survivors caused the contracts to be unenforceable. This same contention was made in *Estate of Albert B. King*, 20 T.C. 930 (1953), but we held that the provision that payment would only be made if the employee did not leave the service of the company created a condition subsequent and did not cause a property interest not to be vested in the decedent. The issue there concerned whether an amount which was set aside by a company for the decedent under a bonus plan was includable in his estate. The decedent in that case was a beneficiary under a bonus plan which provided for part payment directly in cash, part directly in stock, and part to be set aside with the total amount not to be paid to the beneficiary if he left the "service of the company or is dismissed from such service." The decedent died while still in the employ of the company. In that case we stated (20 T.C. at 936) :

At the end of each month that a beneficiary continued in the service of the Company, the bonus custodian transferred a proportionate amount of the unpaid balance of each award from a debit to a credit in the account of the beneficiary, after which the amount so credited was no longer subject to forfeiture. At the time of decedent's death, cash and stock of the value of $10,895.63 had been so credited to decedent and would have been payable even if he had left the service of the Company. The balance of the undelivered $37,483.25, however, was also the property of the decedent at the time of his death, since the condition subsequent had not operated so as to divest the interest of decedent, who was still in the employ of the Company. * * *

Similarly, in the instant case a right to have payments made to decedent's widow and issue was vested in the beneficiaries when decedent and his employers executed the three contracts on January 29, 1964.

Although this right was subject to forfeiture if decedent left the employ of the companies, such condition did not occur and here, as in *Estate of Albert B. King, supra,* there had been no divestment of the property right at the date of decedent's death.

The final contention made by petitioner with respect to the enforceability of the contracts is that after decedent's death there was no person entitled to bring an action to require the corporations to comply with the contracts. Petitioners argue the unenforceability of the contracts after the date of decedent's death, both in support of the proposition that decedent made no enforceable contracts and the proposition that if property was transferred by decedent its value at the date of his death was zero. As we understand petitioners' argument it would apply to any situation where a person prior to his death made a payment to another to pay an amount over to a person designated by the person making the payment after that person's death. In other words this contention would apply to the example which we quoted from *Chase Nat. Bank* v. *United States, supra.*

Petitioners point out that under Massachusetts law, a third-party beneficiary of a contract has no right of action on the contract made for his benefit, citing *Mellen* v. *Whipple,* 1 Gray 317 (1854), and *Saunders* v. *Saunders,* 154 Mass. 337, 28 N.E. 270 (1891). Petitioners contend that since the amount to be paid under the contracts were to go to the widow and issue of decedent, the administrators or executors had no duty or even right to sue to enforce the contracts because the result of the suit would produce no asset for the estate, citing *Comstock* v. *Bowles,* 295 Mass. 250, 3 N.E. 2d 817 (1936). In our view petitioners take too narrow a view of the duties of an administrator or executor. The case of *Comstock* v. *Bowles, supra,* indicates that the duties of an executor are not as limited as petitioners contend. In our opinion under Massachusetts law and the provisions of the contracts here involved, suit might be brought by the administrators or executors to enforce the rights of the widow and issue under the contracts here involved. However, there are also other means whereby these contracts might be enforced. Massachusetts does follow the minority or "English" rule that generally a third-party beneficiary cannot sue in his own name to recover on a contract for which he furnished none of the consideration. However, there are now a number of exceptions to this rule. See 17A C.J.S. 951, 952, Contracts sec. 519(2)b(c), particularly fns. 97 and 98, and Burnhardt, "Third Party Beneficiary Rights in Massachusetts," 49 Mass. L. Q. 159, 1963–168 (1964).

Furthermore, in Massachusetts it has long been recognized that where the legal title to tangible property or to a chose in action is in one person and the beneficial title is in another, the person having the beneficial interest may maintain an action in the name of the legal

owner whenever necessary for the protection of his beneficial interest. *Edgeworth Company* v. *Wetherbee*, 6 Gray (Mass.) 166, and *Choate* v. *Board of Assessors of the City of Boston*, 304 Mass. 298, 23 N.E. 2d 882, 886 (1939). The Massachusetts law in this respect is in accord with the law generally in those states which do not permit a third-party beneficiary to sue in his own name. 17A C.J.S. 948, 949, Contracts, sec. 519(2)a and 67 C.J.S. 908, 909, Parties, secs. 8 and 9. Prior to the enactment of the statutory provision in Massachusetts permitting an assignee of a contract to sue in his own name, an assignee also could bring suit only in the assignor's name. *Piper* v. *Childs*, 290 Mass. 520, 195 N.E. 763, 765 (1935). As was pointed out in *Choate* v. *Board of Assessors of the City of Boston, supra*, the rule in Massachusetts still is that one having a beneficial interest in a chose in action may enforce his claim in the name of the person having legal title "even if such person is unwilling to permit the use of his name if he is indemnified against the payment of costs or expenses that might be incurred by the prosecution of the claim." The case of *Saunders* v. *Saunders, supra*, relied on by petitioners, involved a contract under seal between the plaintiff's husband and her husband's brother, in which each had agreed to make payments to the widow of the first to die. The Court in holding that the widow of the first brother to die could not maintain an action in her own name stated, "the question whether the administrator or executor of the husband of the plaintiff may not maintain an action on the agreement for her benefit or whether she may not herself bring suit in the name of the executor or administrator has not been argued to us and we have not therefore considered it."

Under the contracts involved in the instant case the executor or administrator of the decedent had a legal title to a chose in action under the specific provision of the contracts between decedent and the three corporations that the agreements "shall be binding upon and inure to the benefit of the parties, their * * * executors, administrators, or other legal representatives." Therefore the beneficiaries of those contracts could bring suits to enforce them in the name of the executor or administrator even without the consent of the executor or administrator. It is clear that under the provisions of Mass. Gen. Laws Ann., ch. 231, sec. 5 (1956),[2] if the executor or administrator assigned in writing his title to the chose in action to enforce the contracts to the beneficiaries thereof, the beneficiaries could maintain an action in their own name. *McMahon* v. *Brown*, 219 Mass. 23, 106 N.E. 576 (1914).

---

[2] Mass. Gen. Laws Ann. ch. 231:
Sec. 5. Action by Assignee of Chose in Action
The assignee of a non-negotiable legal chose in action which has been assigned in writing may maintain an action thereon in his own name, but subject to all defences and rights of counter-claim, recoupment or set-off to which the defendant would have been entitled had the action been brought in the name of the assignor except as otherwise provided in section three of chapter one hundred and seven A. * * *

We conclude that the widow or children of the decedent had a method of enforcing their rights under the contracts if the corporations had refused to make the payments provided for therein. Petitioners do not contend that the contracts here involved were not valid contracts. However, it might be noted that in *Murrell* v. *Elder-Beerman Stores Corp.*, 16 Ohio Misc. 1, 239 N.E. 2d 248 (1968), a contract very similar to those here involved was held valid, but in *Galler* v. *Galler*, 45 Ill. App. 2d 452, 196 N.E. 2d 5 (1964), the court held that payments by a corporation to the widow of a 47½-percent stockholder, pursuant to an agreement between him and his brother who owned an equal amount of stock, would be an *ultra vires* gift of corporate property.

Since we conclude that decedent for adequate consideration made a transfer of property by entering into the agreements of January 29, 1964, it is necessary to decide whether the transfer is of a type includable in decedent's estate under the provisions of sections 2035, 2036, or 2038. Respondent specifically states that he is not relying on section 2037 which deals with transfers to take effect in use or enjoyment at or after death since there was no reversionary interest retained by decedent.

Section 2035 [3] provides for the inclusion in a decedent's estate of a transfer made in contemplation of death. Under this section a transfer without adequate consideration made within a period of 3 years before the date of death is deemed to be a transfer in contemplation of death, unless the estate establishes otherwise. The contracts of January 29, 1964, were made shortly before decedent's death in February 1964 and therefore if the other evidence is not sufficient to show that these transfers were not in contemplation of death, they are deemed to be in contemplation of death under the statute. The evidence here shows that the decedent's last illness existed for approximately 4 months preceding his death and that at the time the contracts were entered into decedent had made an appointment for surgery for removal of gallstones. There is no evidence to overcome the presumption of the transfer being in contemplation of death unless the contracts entered into on January 29, 1964, are to be considered to be a continuation of

---

[3] SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) APPLICATION OF GENERAL RULE.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment) ; but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.

the contracts entered into on February 3, 1955. The facts show that the 1955 agreements were canceled and therefore from a strictly formal viewpoint the January 29, 1964, agreements were new agreements and not continuations of the prior agreements. Also, in our view there were sufficient differences in the contracts of January 29, 1964, and the prior contracts for the later contracts not in substance to be considered as continuations of the earlier contracts. The later contracts not only provided for a somewhat larger amount to be paid over a longer length of time, but also contained the provision that the contracts were binding contracts and could not be terminated, altered, or amended, except by the written consent of both parties. The earlier contracts had contained no such provision and in fact had contained certain provisions more in the nature of a continuing offer than a firm contract. We therefore hold that the transfers here were in contemplation of death.

Since as previously pointed out we consider the contracts to be enforceable, we do not agree with petitioners that their value was zero but hold the commuted value of the payments provided for therein as stipulated by the parties to be includable in decedent's gross estate. In view of our conclusion that the commuted value of the payments to be made to decedent's widow and children is includable in decedent's estate under section 2035, it is unnecessary to pass on the arguments made by respondent with respect to their inclusion under other sections.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TANNENWALD, *J.*, concurring: There are two essentials of section 2035 which must be met before the "contemplation of death" element comes into play. That section requires (1) the decedent must have had an *interest in property* and (2) that he must have made a *transfer* of that interest.

Here the consideration for the post-mortem payments was the future services of the decedent. Such consideration has been deemed to constitute property in which the decedent had an interest and which he transferred for purposes of other estate tax provisions having a requirement comparable to that contained in section 2035. E.g., *Rosenberg v. United States*, 309 F. 2d 724, 727 (C.A. 7, 1962); *Worthen v. United States*, 192 F. Supp. 727, 734 (D. Mass. 1961); cf. *Estate of William L. Nevin*, 11 T.C. 59, 65 (1948).[1] Moreover, because of the intangible character of such consideration, its value can be deemed equal to the commuted value of the payments at the date of death. See

---

[1] In this case, there is also further evidence of consideration stemming from the mutuality of the identical agreements entered into by the three corporations with the decedent and his two brothers. Cf. *United States v. Estate of Grace*, 395 U.S. 316 (1969); *Lehman v. Commissioner*, 109 F. 2d 99 (C.A. 2, 1940).

*Estate of William S. Miller*, 14 T.C. 657, 662 (1950). Where the consideration furnished by the decedent is tangible in character, a different standard for measuring what property has been transferred may be required. Cf. *Estate of Inez G. Coleman*, 52 T.C. 921 (1969), on appeal (C.A. 5, Jan. 5 and 30, 1970).

But, as I see it, it is not necessary to rest our decision on the equating of the consideration of decedent's services with an interest in property which was transferred. It is entirely possible to conclude that, on January 29, 1964, decedent could have obtained the promise of the corporations to make the payments in question *to his estate*. At least, petitioner has not sustained its burden of proof to the contrary in this regard. On this basis, I would hold that petitioner had a constructive interest in property which he transferred and that, consequently, the two above-mentioned essentials of section 2035 have been met. Cf. *Chase Nat. Bank* v. *United States*, 278 U.S. 327 (1929) ; *Adeline S. Davis*, 27 T.C. 378 (1956). See also *Estate of Inez G. Coleman, supra,* where the insurance policy was taken out more than 3 years prior to the decedent's death.

I also agree with the majority that the fact that the payments were conditioned on the decedent being in the employ of the corporations at the time of his death does not affect the foregoing conclusions. Such a condition did no more than make the interest of the decedent contingent. It did not prevent that contingent property interest from arising. Cf. *Estate of Albert B. King*, 20 T.C. 930 (1953) ; *Adeline S. Davis, supra; Estate of Frederick John Twogood*, 15 T.C. 989 (1950), affirmed on another ground 194 F. 2d 627 (C.A. 2, 1952) ; *Estate of William J. Higgs*, 12 T.C. 280 (1949), reversed on another ground 184 F. 2d 427 (C.A. 3, 1950). The situation is to be sharply distinguished from that which exists where the payments to be made upon the employee's death remain subject to the discretion of the employer. *Estate of William E. Barr*, 40 T.C. 227 (1963) ; *Estate of Albert L. Salt*, 17 T.C. 92 (1951).

It is also clear to me that section 2033 is not applicable. As *Estate of Edward H. Wadewitz*, 39 T.C. 925 (1963), affd. 339 F. 2d 980 (C.A. 7, 1964), holds, the decedent herein had no interest in property which he was capable of transferring at the time of his death. *Miller* v. *United States*, 389 F. 2d 656 (C.A. 5, 1968), and *Bernard* v. *United States*, 215 F. Supp. 256 (S.D.N.Y. 1963), involved merely the question of "income in respect of a decedent" under section 691—a question which does not require any determination of an interest in property or a transfer thereof by a decedent. They are therefore inapplicable. In *Riegelman's Estate* v. *Commissioner*, 253 F. 2d 315 (C.A. 2, 1958), affirming 27 T.C. 833 (1957), the *estate of the decedent* was entitled to the post-mortem payments. It was this right *of the estate* which was equated with an

interest in property. In the instant case, the decedent's estate had no such right so that *Riegelman's Estate* is also not applicable. Cf. *Estate of Inez G. Coleman, supra.*

Nor do I think that it can be successfully maintained that the power of the decedent and the three corporations, by mutual agreement, to modify the arrangements so as to provide that the payments should be made to decedent's estate constituted an interest in property within the meaning of section 2033 or a *retained* power so as to bring section 2036 or 2038 into play. Cf. *Landorf* v. *United States*, 408 F. 2d 461, 471 (Ct. Cl. 1969); *Kramer* v. *United States*, 406 F. 2d 1363, 1369 (Ct. Cl. 1969); *Estate of Max J. Gorby*, 53 T.C. 80, 88 fn. 11 (1969); *Adeline S. Davis, supra.*

---

QUEALY, *J.*, concurring: I agree with the majority's holding that the commuted value of the payments is taxable as a part of the estate of the decedent, but I would reach that result under a different provision of the statute.

In my opinion, the commuted value of the payments to be received by the decedent's surviving spouse or issue is includable in the gross estate of the decedent under section 2033 of the 1954 Code.[1] That section provides as follows:

SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

What we have here in each case is a simple contract between an employee and his employer to pay a death benefit in the form of an annuity to a designated beneficiary, if then living, in the event of the death of the employee while in the employ of the contracting party. The employer clearly became bound to make the payments in question, the consideration being "the continued services, advice and experience" of the employee. The fact that the decedent's compensation was "fair, reasonable and adequate" without regard to payments to be made after his death is immaterial. The employer was willing to pay something more "as an inducement to the Employee to remain in the Company's employ."

The right to the benefits in question could only arise as a result of the fulfillment of the conditions of his employment by the decedent. Until those conditions were fulfilled—which could not occur up until the date of the death of the decedent—all that the beneficiaries had was a mere expectancy or hope that the decedent would perform his part

---

[1] A reenactment substantially without change of sec. 811(a) of the Internal Revenue Code of 1939.

of the agreement, thereby making unconditional the obligation of the employer to pay the benefit. *Salesky* v. *Hat Corporation of America*, 244 N.Y.S. 2d 965.

In my opinion, the majority erroneously concluded that the beneficiary acquired a vested interest in the payments upon execution of the contracts. By stipulation, the parties agreed that the decedent was employed "at the will" of his employers. I do not interpret the cases [2] cited by the majority as supporting the view that the discharge of the decedent by his employer without cause prior to death would not defeat the beneficiary's right to the payments.

The contracts gave rise to nothing more than the assignment to designated beneficiaries of future income which would result only upon the fulfillment of the obligations of his employment by the decedent. *Bernard* v. *United States*, 215 F. Supp. 256 (S.D.N.Y. 1963) ; *Miller* v. *United States*, 389 F. 2d 656 (C.A. 5, 1968). Prior to the decedent's death, the only "property" or "interest" stemmed from the contract itself. The decedent was a "party" to that contract. The contract provided that it "shall be binding upon and inured to the benefit of the parties, their successors, heirs, executors, administrators or other legal representatives." All rights thereunder were not only reserved by the decedent up to the time of his death, but the right to enforce the terms of the contract passed to his executor or administrator. Such a contract has been held to constitute "property" in which the decedent had an "interest" within the meaning of section 2033. *Goodman* v. *Granger*, 243 F. 264 (C.A. 3, 1957).[3]

I believe it to be immaterial that the decedent during his lifetime could not have received any payments under such a contract. Since the benefits under the contract are treated as having been earned by the decedent during his lifetime for income tax purposes—and in this case earned up to the very instant of his death—the decedent must necessarily be regarded as the "source" of the payments. *Bernard* v. *United States, supra.* Consistency would seem to require the inclusion of such payments, which the decedent could not effectively transfer for income tax purposes, in the decedent's estate for purposes of the estate tax. *Riegelman's Estate* v. *Commissioner*, 253 F. 2d 315 (C.A. 2, 1958), affirming 27 T.C. 833 (1957).

In *Riegelman's Estate* v. *Commissioner, supra*, the decedent was a partner in a law firm. The partnership agreement provided that, upon

---

[2] *Patton* v. *Babson Statistical Organization*, 259 Mass. 424, 156 N.E. 534 (1927) ; *Ravage* v. *Johnson*, 316 Mass. 558, 56 N.E. 2d 25 (1944) ; *Karcz* v. *Luther Manufacturing Co.*, 338 Mass. 313, 155 N.E. 2d 441 (1959).

[3] Although this Court stated in *Estate of Edward H. Wadewitz*, 39 T.C. 925, 931 (affd. 339 F. 2d 980 (C.A. 7, 1964)), that the sole question presented in the *Goodman* case was the determination of fair market value, the fact remains that unless the contracts in question were held to constitute "property" in which the decedent had an "interest" under sec. 811(a), I.R.C. 1939, there was nothing to value for estate tax purposes.

the death of a partner, the partnership would not be dissolved, and the estate of a deceased partner would be entitled to receive certain payments from the continuing firm. The question presented was whether the value of the payments attributable to services by the partnership after the death of the decedent was includable as part of the gross estate under section 811(a) of the Internal Revenue Code of 1939, which provision was reenacted as section 2033 of the 1954 Code. In considering this question, the court first looked to section 691 of the Code to determine whether the payments in question should be regarded as "income in respect of a decedent." The court said:

We think, however, that there is a more fundamental reason for holding Bull inapplicable to the case at bar. That decision was handed down in 1935 and involved estate tax liability accruing during the year 1920. During the intervening years Congress has enacted substantial changes in the Internal Revenue Code. We deem of particular importance § 134(e) of the Act of October 21, 1942, 56 Stat. 831, incorporated as § 126 of the Internal Revenue Code of 1939, 26 U.S.C. & 126. That section introduced into the income tax provisions of the Code the concept "income in respect of a decedent." * * * Subsection (c) of that section provides for a deduction of the portion of the estate tax attributable to inclusion in the estate of the right to receive such income. A reading of subsection (c) indicates that it contemplates that an estate tax is payable on the value for estate tax purposes of all the items described in subsection (a)(1). The question here, therefore, is whether the post-death partnership income received by Riegelman's estate constitutes "income in respect of a decedent," for it is clear that right to receive these amounts was acquired by the estate from the decedent. * * *

After concluding that the payments were "income in respect of a decedent," the court further concluded that the stipulated value of the right to receive such payments was includable in the estate of the decedent for the purpose of determining an estate tax. The rationale of this decision would be equally applicable to any payment which constitutes income in respect of a decedent under section 691(a)(1) regardless whether the payee is a person described in substection (A), subsection (B), or subsection (C).

I believe that the reasoning in the *Riegelman* case would require the inclusion of the commuted value of the payments in question in the estate of the decedent under section 2033, I.R.C. 1954. Even in the absence of that decision, however, my conclusion would be the same.

For the most part, prior cases which might seem to be contrary to this conclusion are readily distinguishable. We are not concerned here with a survivorship annuity such as was involved in *Molter* v. *United States*,[4] 146 F. Supp. 497 (E.D.N.Y. 1956), and *Bahen's Estate*

[4] For the estate tax consequence of the same survivorship plan under the 1954 Code, see *Gray* v. *United States*, 410 F. 2d 1094 (C.A. 3, 1969), affirming 278 F. Supp. 281 (D.N.J. 1967).

v. *United States*, 305 F. 2d 827 (Ct. Cl. 1962), or with survivorship benefits under plans which could be terminated at the discretion of the employer such as were involved in the *Estate of Albert L. Salt*, 17 T.C. 92 (1951), and the *Estate of William S. Miller*, 14 T.C. 657 (1950). Nor are we concerned with voluntary or gratuitous payments by an employer to the spouse or surviving family of a deceased employee such as were involved in the *Estate of William E. Barr*, 40 T.C. 227 (1963), and the *Estate of Raymond W. Albright*, 42 T.C. 643 (1964), reversed on another point 356 F. 2d 319 (C.A. 2, 1966). Finally, we are not concerned with specific sums or property which have been committed and set aside by the employer for the benefit of the employee to be paid over to his estate upon his death. *Estate of Albert B. King*, 20 T.C. 930 (1953) ; *Estate of Eugene F. Saxton*, 12 T.C. 569 (1949).

In the case before us, the decedent and his employer "bargained" for the payment of a specified sum to designated beneficiaries in consideration of continued services to be rendered by the decedent. In similar cases, the courts have consistently held that the agreement gave rise to a "transfer" which was includable in the estate of the deceased employee as a transfer to take effect in possession or enjoyment after the death of the decedent under section 811(c) of the 1939 Code. *Worthen* v. *United States*, 192 F. Supp. 727 (D. Mass. 1961) ; *Estate of William L. Nevin*, 11 T.C. 59 (1948) ; *Estate of Paul G. Leoni*, a Memorandum Opinion of this Court dated Oct. 20, 1948. What is of particular significance is that in those cases the courts uniformly held that there was a "transfer," but based their decision on the fact that the transfer took effect in possession or enjoyment at or after death. In my opinion, there was nothing to transfer in this case until the death of the decedent.

With respect to the applicability of section 2033 to this type of case, I would not follow the opinion in *Estate of Edward H. Wadewitz*, 39 T.C. 925. See also *Kramer* v. *United States*, 406 F. 2d 1363 (Ct. Cl. 1969). In the *Wadewitz* case the Tax Court decided that section 2039 was applicable so that the decision with respect to section 2033 was not considered by the Court of Appeals. In the *Kramer* case, the Court of Claims held that the only property interest of the decedent terminated upon his death, and therefore could not be reached by section 2033. In the case before us, if the decedent ever had any property interest in the contracts, that interest certainly was not terminated upon his death. Under the terms of the contracts his executors or administrators succeeded to that interest.

I do not believe it material whether the beneficiaries could bring suit on the contracts in Massachusetts as party plaintiffs. See *Saunders* v. *Saunders*, 154 Mass. 337, 28 N.E. 270 (1891). With apparent foresight the decedent anticipated that difficulty. Under the terms of the

contracts, the decedent specifically bound his "executors, administrators or other legal representatives." As a practical matter, not only would the decedent's administrators be fully justified in enforcing the contracts for the benefit of the petitioner's spouse, but a failure to do so would constitute a breach of an obligation or duty which they undertook as a part of the estate. I find it difficult to believe that an administrator who undertook such a duty or obligation would be charged on the grounds that any resulting expense was not warranted. Cf. *Comstock v. Bowles*, 295 Mass. 250, 3 N.E. 2d 817 (1936).

With respect to the question of value, regardless whether the decedent's interest in the agreements is includable in his gross estate under section 2033 or 2035, I agree that the respondent has properly valued the payments. *Goodman* v. *Granger, supra*.

DAWSON and SIMPSON, *JJ.*, agree with this concurring opinion.

---

WITHEY, *J.*, dissenting: I respectfully dissent from the opinion of the majority herein for the reason that to me it is impossible to bring into existence by semantics or sophistry any property right of any kind which was possessed by the decedent at any time during his life. Cf. *Worthen* v. *United States*, 192 F. Supp. 727 (D. Mass. 1961). Section 2035, I.R.C. 1954, requires for its applicability two basic elements without which it has no function to include any amount in the value of a decedent's estate. The first is property or a property right possessed by decedent *during his life*. The second is a transfer in some form of that property or property right. Lacking the subject of a "transfer" there can be none.

DRENNEN, *J.*, agrees with this dissent.