ESTATE OF RAYMOND W. ALBRIGHT, DECEASED, RUTH S. ALBRIGHT, J. ROGER WOLLENBERG, RAYMOND W. ALBRIGHT, JR., EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91041.    Filed June 25, 1964.

*Sergeant W. Wise*, for the petitioners.
*Philip Shurman*, for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in estate taxes against the estate of Raymond W. Albright, in the amount of $3,419.08 subject to a reduction by the credit for State death taxes.

Respondent agrees that he has received satisfactory evidence in support of the credit of State death taxes in the amount of $1,565.08, so

that the net deficiency in this case is $1,854. The parties further agree that the amount of executors' commissions to be allowed as a deduction shall be the subject of a Rule 50 computation.

The issues presented for decision are: (1) Whether the amount of $6,332, representing the discounted value of 93.47 shares of Eastman Kodak Co. common stock which the corporation on December 29, 1957, allotted to the estate of the decedent by an additional credit of said shares to decedent's deferred compensation account, is includable in the gross estate of the decedent, and (2) whether the entire amounts paid to decedent's estate under two annuity contracts are includable in the gross estate of the decedent.

FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference.

The petitioners are the duly qualified and acting executors of the estate of Raymond W. Albright (hereinafter sometimes referred to as decedent) under letters testamentary granted February 26, 1957, by the Surrogate's Court of Monroe County, N.Y. Petitioners filed a Federal estate tax return on behalf of decedent's estate with the district director of internal revenue, Buffalo, N.Y.

At the time of his death on February 19, 1957, decedent had been an employee of Eastman Kodak Co., Rochester, at a salary of $55,000 a year.

On November 20, 1956, the board of directors of Eastman adopted a Deferred Compensation Plan (hereinafter sometimes referred to as the Plan) for its higher paid executives, which reads, in part, as follows:

DEFERRED COMPENSATION PLAN

I. *General Description of Plan*

This Plan provides for the establishment by Eastman Kodak Company of an incentive compensation account which shall be used as the basis for determining the amount of deferred compensation payments to participants. It also provides for the payment of deferred compensation, in addition to salaries, to certain employees of Eastman Kodak Company and to certain employees of its North American subsidiaries, subject to the fulfillment of certain contingencies.

Allotment of incentive compensation to the account depends upon action by the Board of Directors of Eastman Kodak Company and of subsidiary companies from year to year. Subject to such annual action, allotment of incentive compensation will be effective on the next succeeding fifth day of January. The amount is based on (1) participants' earnings with the Company during the previous five calendar years, and (2) the amount of cash dividends per share declared on Kodak's common stock during the previous year. In no case, however, will the total of the incentive compensation allotted in respect of participants in any one year exceed the amount that would have been appli-

cable to such participants under the wage dividend formula except for the amendment as to eligibility made by the Board of Directors on November 20, 1956.

The Company shall establish an incentive compensation account on its books and maintain records of the additions thereto and deductions therefrom in respect of participants. The Company shall retain the incentive compensation allotted contingently by the Board of Directors to the incentive compensation account until the respective times when participants qualify for payment, after which time deferred compensation will be paid to such participant in 10 to 15 installments if living and, if not, to his legal representative, subject to compliance with the conditions stated hereinafter.

To qualify for each installment of deferred compensation under the Plan, a participant must have terminated his services with the Company by reason of retirement or disability on annuity or with disability payments under the terms of the Company's plans or by reason of death, and during the period following the termination of his employment with the Company, must not be engaged in the operation or management of a business, or engaged in any other activity, contrary to the interests of Eastman Kodak Company or one of its subsidiaries, and must be available, unless physically incapacitated therefor, to render advisory and consultative services to the Company at reasonable compensation if and when requested by the Company so to do.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

IV. *Contingent Allotments*

If, in any year, the Board of Directors determines to authorize an addition to the incentive compensation account, such action will be accomplished by appropriate resolution. The Board may adopt, amend or rescind rules of eligibility establishing the conditions of participation by employees of the Company or its subsidiaries. Initially, a participant must have been employed at least five years with the Company and/or one or more of its subsidiaries, not over such age and in such salary range or wage dividend range as may be established by the Board from time to time.

Upon such addition by the Board to the incentive compensation account, the amount in respect of participants will be stated upon the Company's books in terms of contingent allotments. A contingent allotment shall be deemed to be the equivalent of a share of the common stock of the Company of the par value of $10 per share taken at the respective average yearly costs (equal to the total of annual incentive compensation) to the Company of shares of such stock purchased, or, if such shares are not actually purchased, at the average fair market value of a share of such stock during the 12 months prior to the first day of January in any given year.

No participant or person claiming under or through him shall have any vested right with respect to this Plan or to any contingent allotment unless and until all the terms, conditions and provisions of this Plan that affect such participant have been complied with as specified herein and until the last day of the Company's fiscal year prior to the year in which an installment of deferred compensation shall be delivered to him; and the Company shall have no right to recover any payment which has been made to a participant.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

VI. *Dividend Equivalents Creditable to Contingent Allotments*

The incentive compensation account shall, during the period and to the extent it remains unpaid and unforfeited, be contingently credited with amounts equivalent to the dividends which would have been paid within such period if each contingent allotment was represented by a share of issued and outstanding

stock (such amounts being called "dividend equivalents"). Such dividend equivalents shall be contingently credited on the date of payment of each such dividend. Such dividend equivalents contingently credited shall represent additional contingent allotments and fractional contingent allotments, taken at the cost to the Company of shares of stock purchased with the amount 'of such dividend equivalents, or, if such shares are not actually purchased, at the fair market value of the Company's common stock on the date of payment of each such dividend, in respect of participants in the same proportion as their contingent allotments then bear to the incentive compensation account. Dividend equivalents contingently credited shall be payable or distributable in the manner and under the same conditions and contingencies as described under Section V of this Plan for deferred compensation. Contingent allotments and fractional contingent allotments arising from dividend equivalents after termination of employment of a participant will be paid out with the balance of other installments of deferred compensation and in like manner and subject to the same conditions.

If, and whenever, the Company shall declare and pay a dividend (other than a stock dividend), in property, upon its issued and outstanding stock, or shall make any distribution with respect thereto, including the distribution of rights to subscribe for or warrants to purchase any of the Company's stock or any securities of any other company at a price less than their then fair market value, there shall be credited to the incentive compensation account the dollar amount of the cash equivalent of such property dividend, as would have been paid upon, or the fair market value of such other distribution as would have been made with respect to, the number and class of stock represented by all contingent allotments had such stock been issued and outstanding, full paid and non-assessable, on the day on which such dividend or other distribution was declared. Such dollar amounts shall be restated in terms of contingent allotments and fractional contingent allotments. For the purposes of this paragraph, the Board of Directors shall make all determinations of fair market values, cash equivalents and dollar amounts in its absolute and uncontrolled discretion, and all such determinations shall be final and conclusive for all purposes hereunder.

\*  \*  \*  \*  \*  \*  \*

VIII. *General Conditions*

The Board of Directors may from time to time alter or amend any or all of the provisions of the Plan or may take no action to authorize any annual addition to the incentive compensation account or may discontinue future additions and, if discontinued, may reinstate any or all such additions. Without limiting the generality of the foregoing, the Board of Directors may alter or amend any provisions of the Plan so as to change the number of installments or the medium in which deferred compensation is payable, or modify the period of time during which any such installments shall be paid and the contingencies under which any such installments shall be paid. Any exercise of the right to alter or amend this Plan which amounts to its discontinuance shall include equitable provision under the circumstances with respect to the disposition of the balance then remaining in the incentive compensation account and to the treatment to be accorded to then existing participants in this Plan and their legal representatives.

At a regular meeting held on November 19, 1957, the board of directors of Eastman adopted the following resolutions:

RESOLVED: That participants in the Deferred Compensation Plan adopted and confirmed by this Board November 20, 1956, shall henceforth consist of those

officers and employees of the Company and its North American subsidiaries whose annual rate of salary either presently or on the last day of the Kodak fiscal year amounts to $45,000 or more ; further

RESOLVED : That there shall be credited to the incentive compensation account pursuant to the provisions of said Deferred Compensation Plan an additional sum equal to the amount ($577,000, more or less) to which participants in the Deferred Compensation Plan would have been entitled under the wage dividend heretofore at this meeting declared by this Board if such participants had been eligible for such wage dividend ; further

RESOLVED : That the last sentence of the second paragraph of Article I of said Deferred Compensation Plan be and hereby is amended to read as follows :

> "In no case, however, will the total of the incentive compensation allotted in respect of participants in any one year exceed the amount that would have been applicable to such participants under the wage dividend formula except for the amendment as to eligibility made by the Board of Directors on November 20, 1956 and on November 19, 1957."

An individual, in order to be eligible for participation under the Plan, must be alive and on the payroll of Eastman at the end of the year and, in addition, must have a rate of salary of at least $45,000 a year. Eastman has a Wage Dividend Plan for employees whose salaries are less than $45,000 a year. The Plan covering employees of Eastman earning $45,000 or more a year operates, as to the formula used to determine the amount of the benefit, in the same manner as in the Wage Dividend Plan for employees earning under $45,000 a year. Under the Wage Dividend Plan, however, the amount so determined is paid to the individuals in the March following the approval of the board of directors.

Aside from the Plan and resolutions of November 19, 1957, there was not at the close of 1957 any other document or official writing relating to the making of allotments to the deferred compensation account of an employee or deceased employee of Eastman.

Decedent became a participant in the Plan at its inception in 1956 and on November 30 of that year Eastman made a contingent allotment of 117.49 shares of Eastman Kodak stock to the decedent representing the incentive compensation awarded to him for 1956. This allotment was evidenced by a credit to a deferred compensation account in the decedent's name on the books of Eastman, which retained title to the shares so allotted.

In April, July, and October of 1957, Eastman paid cash dividends to its stockholders. The amount of such dividends on the 117.49 shares which had been credited to the decedent's deferred compensation account amounted to $212.84, and this amount was converted during 1957 into 2.21 shares of said stock which constituted an additional contingent allotment of deferred compensation credited to decedent's account.

On November 19, 1957, the board of directors of Eastman authorized the award to participants in the Plan of contingent allotments of in-

centive compensation for the year 1957. The decedent's incentive compensation for 1957 was determined to be $9,010. This amount was converted into shares of Eastman stock at the average price at which the corporation had purchased said stock on the open market during 1957, so that an additional contingent allotment of 93.47 shares of stock was credited to the decedent's account on December 29, 1957. The Plan did not provide for or authorize an award of incentive compensation to a deceased participant.

Decedent died while an employee of Eastman 9 days before reaching the age of 63 and, pursuant to the Plan, the contingent allotments of stock credited to his deferred compensation account became payable to his estate in 12 annual installments.

The board of directors of Eastman could at any time alter or amend any or all of the provisions of the Plan, take no action to authorize any annual addition to the deferred compensation account, or discontinue future additions.

The decedent, during his participation under the Plan, did not possess any of the stock allotted to his account. He could not sell, pledge, or vote such stock. The stock was not registered in his name and he did not receive any dividends thereon.

At his death decedent was a beneficiary under an Aetna Life Insurance Co. annuity contract with a prior employer which was to provide him with a life annuity commencing March 1, 1959, had he lived until that date. The decedent's death terminated his interest under this contract and the death benefit of $4,728.40 called for under the contract was paid to Ruth S. Albright, the beneficiary designated therein in event of his death. This death benefit consisted entirely of the contributions decedent had made to the cost of said contract plus interest on said contributions. Decedent had contributed $2,909.19 to the cost of the annuity contract and the company by which decedent had been employed had contributed $2,292.52 to the cost of said annuity contract.

This Aetna contract provided that if it was surrendered during decedent's lifetime and before the first annuity payment became due (Mar. 1, 1959) the insurance company would pay decedent $2,374 with interest computed annually from January 1, 1944, plus the amount of premiums paid with interest.

The decedent was the annuitant under a group annuity contract issued by the Metropolitan Life Insurance Co. This contract with Eastman would have provided the decedent with a life annuity commencing March 1, 1959, had he lived until that date. The decedent had contributed $5,349 and Eastman had contributed $81,316.34 to the cost of said annuity contract at the time of decedent's death. The decedent's death terminated his interest under the contract and the death benefit of $5,349 specified by said contract was paid to Ruth S. Albright,

the beneficiary designated therein. Said death benefit consisted entirely of contributions made by the decedent.

The contract stated that the amount payable upon the death of a covered employee prior to the date the annuity was to begin "shall be the aggregate of the contributions which were made by the employee and received by the insurance company." Under the heading "Benefits on Termination of Employment (otherwise than by death)" it is stated that an employee may elect prior to his annuity date to receive a refund of the aggregate of any contributions which were made by him and received by the insurance company and unless he completed 15 years of continuous service (thereby possibly becoming entitled to a lesser annuity), all his rights thereunder automatically terminated.

Each of said annuity contracts was issued by the respective insurance companies to the respective employers pursuant to a plan of each of said employers which was and continued to be qualified for the income tax benefits permitted under section 401(a), Code of 1954,[1] and related sections and under the corresponding sections of the 1939 Code.

In filing the Federal estate tax return, the executors of the decedent's estate included the discounted value of 117.49 shares of stock assigned to the decedent's deferred compensation account in December 1956. They did not include the discounted value of the 93.47 shares of stock added to the decedent's account 10 months after his death. The executors included in the gross estate of decedent $2,644.45 in respect of the amount paid under the Aetna contract and $330.14 in respect of the Metropolitan contract.

Respondent determined that $6,332, representing the discounted value of 93.47 shares of stock and the entire benefits received under the annuity contracts, were includable in the decedent's gross estate under the provisions of sections 2033 and 2039.

### OPINION

### Issue 1

At decedent's death 117.49 shares of Eastman Kodak stock stood to his credit in the deferred compensation account of Eastman. These shares had been assigned to his deferred compensation account in December 1956 as a result of the action of the board of directors in November of 1956 in accordance with the deferred compensation plan adopted at that time. The decedent's executors included as a taxable asset of the estate the discounted value of these 117.49 shares of stock.

Respondent seeks to add to the taxable estate the discounted value of the 93.47 shares of stock which Eastman added to the decedent's account in December 1957, 10 months after the decedent's death. It is respondent's position that the decedent's legal representatives had a right to receive the additional stock credited to the decedent's account,

---

[1] All references to the Code sections are to the Internal Revenue Code of 1954 unless specifically stated otherwise.

and the value thereof is, therefore, includable in the decedent's taxable estate under the provisions of section 2039.[2]

Petitioners contend that at death the decedent had no interest in the shares so allotted and that he had no contractual right to said allotment by virtue of the terms of the Plan. Petitioners further allege that neither the decedent nor his representatives had a vested right to receive the shares and the allotment was purely voluntary on the part of Eastman.

The precise issue here involved was presented to us in *Estate of William E. Barr*, 40 T.C. 227 (1963). In that case we held that a transaction identical in all material respects to the transaction in the instant case did not create an includable item in the decedent's gross estate, either under section 2033 or section 2039. The *Barr* case involved a wage dividend death benefit paid to the wife of a deceased employee of Eastman, whose salary had been less than $45,000 a year. We held that said benefit was not includable in the decedent's gross estate. The authorities cited and the analysis thereof in the *Barr* decision on the wage dividend issue are applicable here and will not be repeated.

Respondent contends that the *Barr* case is factually distinguishable and, therefore, not controlling in the instant case. With this we cannot agree. The Plan here involved stemmed from Eastman's long-established Wage Dividend Plan. The rules of eligibility under the Plan are the same as those under the Wage Dividend Plan, with the exception of salary limitations. Under the Plan, however, no payments are made to participants until retirement, while the Wage Dividend Plan envisions each payment of the wage dividend during employment. The formula and methods of computation of amounts are the same in both plans.

Respondent asserts that the Plan involved herein complies with the literal language of the statute requiring "any form of contract or agreement" and that decedent possessed the right to a "payment" of deferred compensation upon retirement. Such "payment," respondent further alleges, was receivable by "any beneficiary," in this case,

---

[2] SEC. 2039. ANNUITIES.

(a) GENERAL.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

(b) AMOUNT INCLUDIBLE.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

the decedent's legal representatives, "by reason of surviving the decedent."

Respondent's argument and citations with regard to section 2039 are certainly relevant to the taxibility of the 117.49 shares allotted prior to decedent's death, but not to the 93.47 shares allotted thereafter. The Plan makes no provision for a payment or allotment in the event of a participant's death prior to retirement. Under the Plan and the rules of participation, in order to be eligible for a 1957 contingent allotment, it would have been necessary for the decedent to have been alive and on Eastman's payroll at the end of its fiscal year. The decedent was not entitled to such allotment under the Plan and his representatives had no enforceable right thereto as a result of his death.

On the basis of the foregoing and the decision in the *Barr* case, we hold that the 1957 allotment to the decedent's deferred compensation account is not includable in the decedent's gross estate for Federal estate tax purposes.

## Issue 2

The second issue presented is whether the amounts paid on death under annuity contracts, which amounts consisted entirely of decedent's contributions plus interest thereon, are includable in decedent's gross estate.

Respondent has determined that section 2033 [3] is applicable and has added to decedent's gross estate the entire amounts of $4,728.40 and $5,349, representing the aforementioned amounts paid under the two annuity contracts, on the ground that decedent possessed under each of the contracts an absolute indefeasible right during his life to receive the amounts of his contributions.

Petitioners are of the view that the amounts here involved are taxable under section 2039(a)[4] and that, under section 2039(c),[5] the total amount includable is limited to a percentage of the value of the annuity or other payment as is represented by decedent's contributions over the total of his and his employer's contributions.

---

[3] SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of the interest therein of the decedent at the time of his death.

[This section was amended in a manner not here relevant by Pub. L. 87–834, sec. 18(a), on Oct. 16, 1962.]

[4] See fn. 2, *supra*.

[5] SEC. 2039. ANNUITIES.

(c) Exemption of Annuities Under Certain Trusts and Plans.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—

\*    \*    \*    \*    \*    \*    \*

(2) a retirement annuity contract purchased by an employer (and not by an employees' trust) pursuant to a plan which, at the time of decedent's separation from employment (by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a) (3), (4), (5), and (6).

The death benefits were paid pursuant to and in the amounts specified by the contracts and come within the express language of section 2039(c) since both plans were qualified for the exclusions permitted by that section.

Respondent argues that the exclusion provision of section 2039(c) is not a complete exclusion from tax but is merely an exemption of amounts which would, if it were not for subsection (c) of section 2039, be includable in the decedent's gross estate only under section 2039(a). Respondent, however, asserts the entire amounts received are includable under section 2033.

With respect to the general annuity provisions, section 2039(a) and (b), it is clear they are not exclusive.[6]  The question is whether the exclusion provided for under section 2039(c) with respect to certain qualified plans or trusts is a complete exclusion from tax or merely an exclusion of amounts that might only fall within subsection (a) of section 2039.

The statutory language, reading as follows: "Notwithstanding the provisions of this section or any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor)"—is quite clear in its meaning. Congress, in adopting this language, specifically extended exclusion coverage to amounts that might be includable under provisions of law other than 2039(a), thereby stating, in effect, that 2039(c) is not to be construed narrowly so as to limit its application to items that fall exclusively within the provisions of section 2039(a).

In this setting we cannot construe the plain statutory words "Notwithstanding the provisions of this section or any provision of law," in such a way as to subvert their meaning.

In view of the foregoing discussion, we believe the correct rule to be that the value of annuities or other payments receivable by a beneficiary under a qualified trust or plan which falls within subsection (c) of section 2039 is to be excludable from a decedent employee's gross estate notwithstanding any other gross estate provision to the contrary.

*Decision will be entered under Rule 50.*

---

If such amounts payable after the death of the decedent under a plan described in paragraph (1) or (2) are attributable to any extent to payments or contributions made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bears to the total payments or contributions made.  For purposes of this subsection, contributions or payments made by the decedent's employer or former employer under a trust or plan described in this subsection shall not be considered to be contributed by the decedent.  This subsection shall apply to all decedents dying after December 31, 1953.

[This provision was amended in a manner not here relevant by Pub. L. 85–866, sec. 23(e), on Sept. 2, 1958, and Pub. L. 87–792, sec. 7(i), on Oct. 10, 1962.]

[6] See S. Rept. No. 1622, 83d Cong., 2d Sess., p. 472, wherein it is stated :

The provisions of this section shall not prevent the application of any other provision of law relating to the estate tax.  For example, if a contract provides for a refund of a portion of the cost thereof, in the event of the decedent's premature death, payable to the decedent's estate the amount thereof shall be treated as any other property of the decedent. * * *