*Decision will be entered under Rule 50.*

ESTATE OF LYLA B. KLEEMEIER, ROBERT B. KLEEMEIER, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2771–70.   Filed May 8. 1972.

*Norman Begeman*, for the petitioner.
*R. Burns Mossman*, for the respondent.

### OPINION

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $3,058.67. The issue for decision is whether a portion of two "supplementary" annuities acquired by decedent as beneficiary upon the death of her husband may be excluded from decedent's gross estate under section 2039(c), I.R.C. 1954.[1]

All of the facts have been stipulated and are found accordingly.

Lyla B. Kleemeier (hereinafter referred to as the decedent), died on July 4, 1966, a resident of the City of Kirkwood, County of St. Louis, State of Missouri.

On July 7, 1966, Robert B. Kleemeier was appointed by the Probate Court of the County of St. Louis, Mo., as executor of decedent's estate, and is still acting in that capacity. At the time of the filing of the

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

petition herein, Robert B. Kleemeier resided in West Lafayette, Ind.

The executor filed a Federal estate tax return, Form 706, for the Estate of Lyla B. Kleemeier, with the district director of internal revenue, St. Louis. Mo.

Decedent was predeceased by her husband, Robert W. Kleemeier (hereinafter referred to as Robert), who died on April 16, 1966. During the period September 1, 1948, through August 31, 1949, Robert had been employed by Northwestern University, Evanston, Ill., as a professor. From September 1, 1958, to the date of his death, Robert was employed by Washington University, St. Louis, Mo., as a professor.

On the date of Robert's death, he was the owner of an annuity contract, No. A–61555 issued on October 1, 1948, by Teachers Insurance & Annuity Association of America (hereinafter referred to as TIAA). Robert was also the owner of an annuity certificate, No. P–15073, on the date of his death which had been issued on January 1, 1954, by College Retirement Equities Fund (hereinafter referred to as CREF). Each of these contracts would mature on December 1, 1980, when Robert reached age 65. Robert had received no payment under either contract at the date of his death.

Robert, Northwestern University, and Washington University, each contributed to the premium cost of the TIAA annuity. The contribution of each, the percentage contribution of each, and the total purchase cost of the TIAA annuity were as follows:

|  |  | Percent |
| --- | --- | --- |
| Northwestern University | $337. 56 | 3. 10 |
| Washington University | 3, 806. 09 | 34. 93 |
| Robert W. Kleemeier | 6, 753. 16 | 61. 97 |
| Total | 10, 896. 81 | 100. 00 |

Robert and Washington University each contributed to the premium cost of the CREF annuity. The contribution of each, the percentage contribution of each, and the total purchase cost of the CREF annuity were as follows:

|  |  | Percent |
| --- | --- | --- |
| Washington University | $3, 806. 08 | 47. 9 |
| Robert W. Kleemeier | 4, 137. 29 | 52. 1 |
| Total | 7, 943. 37 | 100. 00 |

At all times material herein, Northwestern University and Washington University were organizations referred to in section 503(b) and exempt from tax under section 501(a).

On the date of Robert's death, the total values of the TIAA annuity contract and the CREF annuity certificate were in the amounts of $13,789.67 and $13,324.33, respectively. The values attributable to

Robert's contributions toward the purchase of the TIAA and CREF annuities were in the respective amounts of $8,546.58 and $6,919.75, which amounts represented 61.97 percent of the total value of the TIAA annuity and 52.1 percent of the total value of the CREF annuity.

The values of the TIAA and CREF annuities attributable to Robert's contributions toward the purchase cost as set forth above were included in the gross estate on the Federal estate tax return filed for Robert's estate. The balance of the values of the TIAA and CREF annuities on the date of Robert's death was excluded from his gross estate under the provisions of section 2039(c)(3).

The decedent was named as sole beneficiary in the TIAA and CREF annuities as of the time of Robert's death. No contingent beneficiary or beneficiaries were designated. No part of the proceeds of these annuities was payable to or received by Robert's estate. Both the TIAA contract and the CREF certificate provided that the benefits thereunder would be paid to the beneficiary in accordance with such available method of settlement as should be elected by the annuitant or in the absence of such election by the annuitant, by the beneficiary after his death.

The TIAA annuity contract, No. A-61555, contained the following provision for payment to the beneficiary designated by the annuitant in the event of death prior to the first annuity payment:

18. Death Benefit Before First Annuity Payment. Upon surrender of this contract and receipt of due proof of the death of the Annuitant before annuity payments have begun, the Association will pay to the Beneficiary the equivalent of the Accumulation at the time of the Annuitant's death, under one of the methods of settlement described below. The method of settlement to become effective shall be elected by the Annuitant or, in absence of such election, by the Beneficiary after the Annuitant's death. Payments will begin on the first day of the calendar month next succeeding receipt of the contract and proof of death and will continue on the first day of subsequent calendar months.

Note: The amount of each payment under an elected settlement depends on the amount of the Accumulation, the particular method elected, and in the case of Methods (1) and (2) the age and sex of the Beneficiary.

Method (1). An annuity payable during the lifetime of the Beneficiary, payments ceasing at death.

Method (2). Guaranteed instalments for 10 or 20 years, as elected, and if the Beneficiary survives such period, continuing thereafter as an annuity payable during the lifetime of the Beneficiary.

Method (3). Guaranteed instalments for such period as may be elected, provided that the election of a period of less than 10 years which would have resulted in payments of more than $100 a month shall be void and another election shall be made.

* * * Upon the death of any Beneficiary who survives the Annuitant by forty-eight hours, the Beneficiary's interest in any guaranteed instalments then remaining unpaid will be commuted and paid in one sum to his or her executors or administrators.

The CREF annuity certificate No. P–15073 contained the following provision for annuity benefits to beneficiary upon the participant's death:

10. Methods of Unit-annuity Settlement. Upon due proof of the death of the Participant before the Maturity Date, and upon receipt of this certificate and the selection of one of the following methods of settlement, the Fund will begin payment to the Beneficiary of a Unit-annuity in accordance with such selection. The Participant may select the method of settlement or, in the absence of selection by him, the Beneficiary may make the selection.

Method (1) Life Unit-annuity. A Unit-annuity payable monthly during the lifetime of the Beneficiary, and ceasing at his death.

Method (2) Life Unit-annuity with a Minimum Guaranteed Period. A Unit-annuity payable monthly during the lifetime of the Beneficiary, with a guarantee that if at the death of the Beneficiary payments have been made for less than either

(a) 10 years, or

(b) 20 years

as selected, the Unit-annuity payments falling due during the balance of the minimum guaranteed period, or their equivalent, will be paid to a payee named when the selection is made. Such payments will be continued during the remainder of the minimum guaranteed period or, if selected, the present value thereof, determined in accordance with the rules of the Fund, will be paid in one sum.

Method (3) Unit-annuity Certain. A Unit-annuity Certain payable for a period selected, and ceasing at the end of such period. This period shall be not less than five years.

Note: The Number of Annuity Units will depend on the method selected, the number of Accumulation Units, the values of Accumulation and Annuity Units, and for Methods (1) and (2) the age and sex of the Beneficiary.

11. TIAA Dollar Annuity for the Beneficiary. In lieu of selection of a Unit-annuity when available under Section 10, the following method of settlement may be selected.

Method (4). The Fund will pay the current value of all Accumulation Units standing to the Participant's credit at the time of payment to TIAA for the purchase of any type of immediate life annuity contract, or annuity certain contract continuing for at least five years, then issued by TIAA, on the Beneficiary's life. In making this purchase, the Beneficiary will have the same rights and be subject to the same conditions as any other person applying for a similar TIAA contract at that time.[2]

After the death of Robert, decedent, pursuant to paragraph 18 of TIAA contract No. A–61555, received TIAA contract No. S4221–4 which was issued to her for payment of the benefits provided for in TIAA contract No. A–61555.[3]

---

[2] It appears that CREF used a TIAA form contract for its annuity contracts and that the contract form used by CREF in 1954 contained provisions which were also applicable to prior TIAA contracts.

[3] This statement is substantially a quotation from the stipulation of facts. However, par. 18 of Robert's TIAA annuity contract which is quoted in this opinion did not specifically provide for such a method of payment. In fn. 2 supra, we noted that apparently the provision for such a method of payment was a part of later TIAA annuity contracts and the provision applied to prior-issued contracts.

After Robert's death, decedent, pursuant to paragraph 10 of CREF certificate No. P–15073, received CREF certificate No. N–371–0, which was issued to her for payment of the benefits provided for in CREF certificate No. P–15073.[4]

At the date of decedent's death, July 4, 1966, the total value of the TIAA contract No. S4221–4 issued to decedent was $13,420.47 and the total value of the CREF annuity certificate No. N–371–0 issued to decedent was $11,919.95.

TIAA contract No. S4221–4 was entitled "Immediate Annuity Contract—Supplementary Contract" and CREF annuity certificate No. N–371–0 was entitled "Unit-Annuity Certain Supplementary Certificate." The "supplementary contract" and "supplementary certificate" each provided for payment over a period of 60 months. Under the designation "General Description," the TIAA contract No. S4221–4 provided as follows:

This is an immediate annuity certain contract issued for payment of the benefits provided in a previous contract. It provides payments for you as the Annuitant, for the period specified above. If you die within the Period of Annuity Payments, a further benefit will be payable to the Beneficiary. This benefit will be either continuation of the payments to the end of such period, or payment in one sum of the present value of such continued payments, whichever is designated above.

The CREF certificate No. N–371–0 carried language under the designation "General Description" which was the same in every respect as that carried in the TIAA contract No. S4221–4 except that reference was made to "Unit-annuity certain certificate" instead of "annuity certain contract" and decedent was referred to as the "Participant" instead of as the "Annuitant."

TIAA contract No. S4221–4 provided that the "annuitant" and CREF certificate No. N–371–0 provided that the "participant" could change the method of payment, change the beneficiary to receive payment in case of her death prior to payment in full, and might during her lifetime, without the consent and to the exclusion of any other person, receive, exercise, and enjoy every benefit, option, right, and privilege conferred by the contract or allowed by TIAA (CREF).

TIAA contract No. S4221–4 carried the following provision:

9. Elections, Revocation of Election, and Changes. By filing written notice with TIAA at its home office in form satisfactory to TIAA, the Annuitant may elect a method of settlement in accordance with Section 2, revoke or change such election, change the Beneficiary or change the frequency of annuity or death benefit payments under Section 4. No such election, revocation, or change will take effect unless received by TIAA at its home office, but upon being so received it will

---

[4] This is so stipulated. However, it would appear from the quotation in the opinion from CREF certificate No. P–15073 that par. 11 of that certificate provided for this method of payment.

take effect as of the date the notice was signed, whether or not the Annuitant is living at the time of such receipt. Such effect will be without prejudice to TIAA by reason of any payment made or other action taken by TIAA before such receipt.

CREF certificate No. N–371–0 carried substantially the same provision.

Decedent by endorsements attached to TIAA contract No. S4221–4 and CREF certificate No. N–371–0 designated the trustees under her will as the beneficiaries. Decedent was at no time during her life employed by either Northwestern University or Washington University and at no time during her life did she contribute funds toward the premium costs of any TIAA annuity contract or CREF certificate.[5]

The Federal estate tax return filed by the executor of decedent's estate contained on Schedule I, "Annuities," the following:

| Item No. | Description | Subsequent valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | Teachers Insurance Annuity Association retirement annuity of Robert W. Kleemeier, died Apr. 16, 1966, payable to widow, Lyla B. Kleemeier, in monthly installments, and payable in lump sum on death of decedent herein, to trustees designated by decedent, value of employee's contribution | | | $8,307.27 |
| 2 | College Retirement Equities Fund—same as above | | | 6,210.29 |
| | Total (also enter under the Recapitulation, Schedule 0) | | | 14,517.56 |

An attached sheet marked "Schedule I" was as follows:

| | TIAA | CREF |
|---|---|---|
| Value at death of annuitant | $13,420.47 | $11,919.95 |
| Employee's contribution | 61.97% | 52.1% |
| Value of employee contribution | [1] $8,307.27 | $6,210.29 |

[1] 61.97% of $13,420.47 is $8,316.66.

Respondent in his notice of deficiency increased the amount reported on "Schedule I—Annuities" of the estate tax return by $10,822.86 with the following explanation:

It is held that the values of the two annuities which were reported on schedule I of the estate tax return should be increased as follows:

| Description of payor | Value reported on estate tax return | Value determined herein | Increase |
|---|---|---|---|
| Teachers Insurance and Annuity Association | $8,307.27 | $13,420.47 | $5,113.20 |
| College Retirement Equities Fund | 6,210.29 | 11,919.95 | 5,709.66 |
| Totals | 14,517.56 | 25,340.42 | 10,822.86 |

---

[5] This fact is stipulated by the parties but apparently is not intended to concern the question of whether the surrender of the original contract and certificate for the new contract and certificate constituted "payment" for the new contract and certificate.

The petition contained the following assignments of error, allegations of fact, and prayer with respect to the increase in the taxable estate by the $10,822.86:

4. The determination of tax set forth in respondent's notice of deficiency was based on the following errors:

\* \* \* \* \* \* \*.

(c) Respondent erred in determining that the value of annuities of Teachers Insurance and Annuity Association and College Retirement Equities Fund, in the amounts of $8,307.27 and $6,210.29, respectively, as reported on Schedule I of petitioner's estate tax return, should be increased, and increasing the taxable values of said annuities by the amounts of $5,113.20 and $5,709.66.

(d) Respondent erred in disallowing the exclusion of the sums of $5,113.20 and $5,709.66 from values of annuities of Teachers Insurance and Annuity Association and College Retirement Equities Fund, respectively, as reported on Schedule I of estate tax return, as exempt under Section 2039 of the Internal Revenue Code.

5. The facts upon which the petitioner relies to support the foregoing assignments of errors are as follows:

\* \* \* \* \* \* \*

(d) Decedent was the beneficiary recipient of employee's retirement annuity of Teachers Insurance Annuity Association, issued to Robert W. Kleemeier, decedent's husband, whose death preceded hers by less than three months. The present value of such annuity at decedent's death was $13,420.47, of which $8,307.27 was attributable to employee contributions of Robert W. Kleemeier. Decedent was also the beneficiary of employee's retirement annuity of the College Retirement Equity Fund, issued to her husband. The present value of said annuity at the date of her death was $11,919.93 of which $6,210.29 was attributable to the employee's contribution. Said amounts were included in petitioner's estate tax return as taxable, and the remainder excluded as exempt under Section 2039(c), Internal Revenue Code. Said annuities were purchased for the employee, Robert W. Kleemeier, by organizations referred to in Section 503, Internal Revenue Code, and which qualified as exempt from tax under Section 501(a), Internal Revenue Code. Said annuities became payable at decedent's death in lump sums to the trustees theretofore designated by decedent.

WHEREFORE, petitioner prays that this court hear the proceedings and determine:

\* \* \* \* \* \* \*

2. That the respondent erred in determining that the values of annuities reported in petitioner's estate tax return should be increased by the amounts of $5,113.20 and $5,709.66, and increasing decedent's taxable estate by such amounts.

3. That there is no deficiency in petitioner's estate tax in respect to Schedules \* \* \* I of estate tax return.

Petitioner on brief states the nature of the controversy to be as follows:

This is a proceeding for redetermination of estate tax liability by reason of respondent's determination of deficiency based upon the inclusion in the gross estate of the value of annuities claimed by petitioner as not properly includable under Section 2039(a) and (b) of the Internal Revenue Code of 1954 in effect at the death of the decedent, and specifically excluded by Section 2039(c)(3).

The issue is whether the value of annuities received by a beneficiary designated by decedent under contracts purchased for decedent's husband by contributions of both the husband and his employers, are excludable from decedent's gross estate under the provisions of Section 2039 of the Internal Revenue Code of 1954.

The argument in petitioner's brief is under two points stated by petitioner to be as follows:

I. The values of annuity payments under TIAA and CREF certificates received by reason of decedent's death are not includable in her gross estate because decedent did not contribute to the purchase of such annuities.

II. The values of annuity payments received by reason of decedent's death are excluded from her gross estate by the provisions of Section 2039(c)(3) of the Internal Revenue Code of 1954 as payments under contracts purchased for decedent's husband as an employee of organizations described in Section 2039 (c)(3).

In support of point I as set forth in petitioner's brief, the following is stated therein:

'As the decedent, Lyla B. Kleemeier, was receiving payments by virtue of original annuity contracts issued to her deceased husband, and in actuality contributed nothing to the purchase price herself, the value of the annuities at her death were, by the language of subsection (b), not includable in her gross estate. Petitioner mistakenly included in the estate tax return a portion of the value of the annuities which was proportionate to the part of the purchase price contributed by decedent's husband.

Respondent in his reply brief contends that the issue raised by point I in petitioner's brief is not properly before the Court. He points out that petitioner in this issue is contending that no portion of the value of the annuities at the date of decedent's death was properly includable in decedent's gross estate. He states that were this issue decided in favor of petitioner, it would result in an overpayment. It is respondent's position that the only issue raised by the pleadings in this case is whether any portion of the value of the annuities at the date of decedent's death was excludable under the provisions of section 2039(c)(3). The estate tax return filed for decedent's estate included the value of the "retirement annuity of Robert W. Kleemeier * * * payable to widow, * * * in monthly installments, and payable in lump sum on death of decedent herein, to trustees designated by decedent, value of employee's contribution."

The petition alleged error on the part of respondent only in increasing the amount of the value of the annuities included in decedent's gross estate and in failing to exclude a portion of those annuities "as exempt under section 2039."

Respondent argues that under the pleadings, point I of petitioner's brief raises a new issue, both with respect to a claimed decrease in the amount of the value of decedent's estate as reported on the return, and with respect to the basis for the exclusion claimed by petitioner. Re-

spondent states that petitioner on brief departs from the claim of an exclusion only under section 2039 (c) (3) and contends that no amount should have been included in decedent's gross estate with respect to the value of the annuities under section 2039 (a) and (b).

Respondent contends that since neither the assignments of error nor the facts alleged in the petition relate to any issue except respondent's denial of an exclusion from decedent's estate of that portion of the annuity not proportionate to the "value of employee's contribution," the issue posed by petitioner's point I is not properly raised under Rule 7 of our Rules of Practice and that we, therefore, should decline to consider this improperly raised issue.

We agree with respondent that petitioner has not properly raised in this case an issue with respect to the exclusion of all or any part of the value of the payments received by the trustees under decedent's will because of the TIAA and CREF annuity contracts, except with respect to respondent's disallowance of the exclusion claimed by petitioner under section 2039 (c) (3). We therefore hold that the issue raised by point I of petitioner's brief, insofar as it claims that no amount of the value of the payment to the trustees under decedent's will at the date of decedent's death is properly includable in decedent's gross estate, is an issue not encompassed in the petition, and we will not consider this contention of petitioner. *Eleanor C. Shomaker*, 38 T.C. 192, 201 (1962).

However, by raising an issue as to the includability of any portion of the annuities in decedent's gross estate under section 2039 (a) and (b), petitioner has suggested, without argument, certain problems inherent in petitioner's position with respect to the exclusion of a portion of the value of the annuities under section 2039 (c) (3). Petitioner's position under both section 2039 (b) and 2039 (c) is premised on the contention that the new contracts issued to decedent had no identity separate from Robert's contracts but were merely a method of payment under those contracts.

Section 2039 (b) refers to "purchase price * * * contributed by the decedent" and "any contributions by decedent's employer or former employer" in much the same manner as section 2039 (c) refers to amounts "attributable to any extent to payments or contributions made by the decedent" and "contributions or payments made by the decedent's employer or former employer toward the purchase of an annuity contract described in paragraph (3)." Since section 2039 should not logically be interpreted as using the same words in subsections (b) and (c) with different meanings, it is apparent that if we should hold, as respondent contends we should, that the exclusion provided for under section 2039 (c) (3) applies only to a decedent who is also the employee, we have, in effect, held that petitioner is correct in

interpreting section 2039(b) to mean that only Robert, the employee, and not the decedent in this case, made a payment for the annuity which decedent was receiving at the date of her death, the value of which at that date was included in decedent's estate on the estate tax return except for the portion excluded purportedly under the provisions of section 2039(c)(3). If no explanation of the scope of section 2039 and its relation to other sections is given, it would appear from a holding in favor of respondent that section 2039(c)(3) refers to a decedent and employee who are the same person, that we were deciding that no amount was includable in decedent's estate under section 2039(a) and (b) (and perhaps by inference under no other provisions of the estate tax laws) even though we state we are not required to consider that issue raised by petitioner for the first time on brief.

We therefore conclude that it is necessary, to a clear understanding of our holding in this case, to point out why a decision that the exclusionary provisions of section 2039(c)(3) do not apply to a decedent who was not the employee for whom payments were made by the employer, is not in effect also a holding that no amount of the value of the annuity contracts at the date of decedent's death is includable in her gross estate. Section 2039(a) and (b) [6] provides for the inclusion

---

[6] SEC. 2039. ANNUITIES.

(a) GENERAL.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

(b) AMOUNT INCLUDIBLE.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

(c) EXEMPTION OF ANNUITIES UNDER CERTAIN TRUSTS AND PLANS.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—

(1) an employee's trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a) ;

(2) a retirement annuity contract purchased by an employer (and not by an employees' trust) pursuant to a plan which, at the time of decedent's separation from employment (by death or otherwise), or at the time of termination of the plan if earlier, was a plan described in section 403(a) ;

(3) a retirement annuity contract purchased for an employee by an employer which is an organization referred to in section 503(b)(1), (2), or (3), and which is exempt from tax under section 501(a) ; or

(4) chapter 73 of title 10 of the United States Code.

If such amounts payable after the death of the decedent under a plan described in paragraph (1) or (2), under a contract described in paragraph (3), or under chapter 73 of

in the gross estate of that part of the value of an annuity or other payment receivable by "any beneficiary by reason of surviving the decedent under any form of contract" providing for an annuity payment to the decedent to the extent of the value which is proportional to the part of the purchase price "contributed by the decedent." Contributions by decedent's employer are considered, for the purposes of section 2039(a) and (b) to be paid by the employee if the employer's contributions are made by reason of the decedent's employment.

Section 2039(c) provides for the exclusion from the gross estate of the value of the annuity or other payment receivable by any beneficiary under an employees' trust which meets the requirements of section 401(a), a retirement annuity contract pursuant to a plan described in section 403(a), or a retirement annuity contract purchased for an employee by an employer which is an organization described in section 503(b)(1), (2), or (3) and which is exempt from tax under section 501(a) to the extent of the payment made by the employer.

There was no counterpart of section 2039 in the 1939 Code. It was enacted to clarify the law with respect to the inclusion in a decedent's gross estate of annuity contracts purchased by a decedent's employer or to which both the decedent and his employer made contributions. See *Estate of Firmin D. Fusz*, 46 T.C. 214, 216 (1966), and cases and legislative history there cited. However, as we pointed out in *Estate of Henry C. Beal*, 47 T.C. 269, 272 (1966), the "broad language of the section goes beyond the precise situation which served as the initial impetus for congressional action in this area."

It is clear from the legislative history of section 2039 and the cases dealing with the applicability of this section that an amount which is includable in a decedent's gross estate under some other section of the

---

title 10 of the United States Code are attributable to any extent to payments or contributions made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bear to the total payments or contributions made. For purposes of this subsection, contributions or payments made by the decedent's employer or former employer under a trust or plan described in paragraph (1) or (2) shall not be considered to be contributed by the decedent, and contributions or payments made by the decedent's employer or former employer toward the purchase of an annuity contract described in paragraph (3) shall, to the extent excludable from gross income under section 403(b), not be considered to be contributed by the decedent. This subsection shall apply to all decedents dying after December 31, 1953. For purposes of this subsection, contributions or payments on behalf of the decedent while he was an employee within the meaning of section 401(c)(1) made under a trust or plan described in paragraph (1) or (2) shall be considered to be contributions or payments made by the decedent. For purposes of this subsection, amounts payable under chapter 73 of title 10 of the United States Code are attributable to payments or contributions made by the decedent only to the extent of amounts deposited by him pursuant to section 1438 of such title 10.

It should be pointed out that the Tax Reform Act of 1969 amended sec. 2039 to require that the organization in question be one "referred to in sec. 170(b)(1)(A)(ii) or (vi), or which is a religious organization (other than a trust), and which is exempt from tax under sec. 501(a)." Sec. 170(b)(1)(A)(ii) and (vi) are substantially identical to sec. 503(b)(2) and 503(b)(3), respectively.

estate tax law is not to be excluded from the gross estate because of failure to fall within the provisions of section 2039(a) and (b). *Estate of Porter* v. *Commissioner*, 442 F. 2d 915 (C.A. 1, 1971), affirming 54 T.C. 1066 (1970). See also *Estate of Firmin D. Fusz, supra,* in which we specifically pointed out in footnote 2, p. 215, that respondent in that case relied only on section 2039 but stated that while we are not bound by this action we would confine our decision to section 2039 and express no opinion with respect to other provisions. See also *Estate of William E. Barr*, 40 T.C. 227 (1963), and *Estate of Edward H. Wadewitz*, 39 T.C. 925 (1963), affd. 339 F. 2d 980 (C.A. 7, 1964), in both of which we considered both the applicability of sections 2033 and 2039. In fact respondent's regulations contain the specific provision that, "The fact that an annuity or other payment is not includible in a decedent's gross estate under section 2039(a) and (b) does not mean that it is not includible under some other section of part III of subchapter A of chapter 11." Sec. 20.2039-1(a), Estate Tax Regs.

Therefore, even if the value of the payments received by the trustees under decedent's will was not includable in decedent's estate under section 2039(a) and (b), it would not follow that the amount was not includable under some other provision of the estate tax laws. If the payments decedent was receiving at the date of her death are considered to be under Robert's original contracts and the new contracts considered merely a method of payment, the question immediately presents itself as to whether the value of these annuities at the date of decedent's death would be includable in decedent's estate under section 2041(a)(2), providing for the inclusion in a decedent's gross estate of property "with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942." See the definition of general power of appointment contained in section 2041(b)(1) and section 20.2041-1(c), Estate Tax Regs.; also, *Estate of Rebecca Edelman*, 38 T.C. 972 (1962) ; *Estate of Charles B. Wolf*, 29 T.C. 441, 447 (1957), modified on another issue 264 F. 2d 82 (C.A. 3, 1959) ; and *United States* v. *Turner*, 287 F. 2d 821, 824 (C.A. 8, 1961). We do not decide whether section 2041(a)(2) is the section of the Code under which the value of the payments to the trustees under decedent's will with respect to the annuity contracts is includable but merely point out that petitioner has neither argued nor shown that the value of these annuities was not properly includable in decedent's gross estate under some other section of the Code if they were not includable under section 2039(a) and (b). However, the fact that the value of these annuities at the date of decedent's death are includable in decedent's estate under a section of the Code other than section 2039(a) does not mean that any exclusion under section 2039(c) is proper. The trustees under decedent's will received the value of the an-

nuities at the date of decedent's death as appointees or "designees" of decedent. It is questionable, therefore, whether decedent's trustees were "beneficiaries" under "a retirement annuity contract purchased for an employee by an employer" as distinguished from appointees to decedent's beneficial rights. Section 2039(c)(3) provides for an exclusion from a decedent's gross estate only of "the value of an annuity or other payment receivable by *any beneficiary * * * under * * * a retirement annuity contract purchased for an employee by an employer.*" (Emphasis supplied.) See *Estate of Wilmar Mason Allen*, 39 T.C. 817, 824 (1963), in which we discussed the necessity of the recipient of a payment qualifying as a "beneficiary" under section 2039(a). However, the fact that the value of the annuities is includable in decedent's estate under a section of the Code other than section 2039(a) would not cause section 2039(c) to be applicable if that section would otherwise be inapplicable.[7]

It is obvious that if the contracts issued to decedent are considered to be separate contracts from the contracts owned by Robert prior to his death, the decedent in this case purchased those contracts by surrender of her rights as beneficiary under the contracts owned by Robert at the date of his death and the value of the contracts at the date of her death would be includable in her gross estate under section 2039(a) and (b) and the provisions of section 2039(c)(3) would be inapplicable since only the decedent would have paid for the contracts. Again, this is an issue which we are not required to decide since in our opinion respondent is also correct in his position on the question posed by the pleadings in this case. We agree with respondent that the exclusionary provisions of section 2039(c)(3) apply only to a decedent who was the employee for whom the payments were made by the employer.

Under petitioner's interpretation of section 2039(c)(3) the exclusion provided for therein is available to a decedent "who was not the employee" for whom the retirement annuity contract was purchased. Peti-

---

[7] The final statement in petitioner's original brief is to the general effect that a payment excludable under subsec. 2039(c)(3) is not includable in decedent's gross estate under other provisions of the Internal Revenue Code. As authority petitioner cites *Estate of Raymond W. Albright*, 42 T.C. 643 (1964), revd. 356 F. 2d 319 (C.A. 2, 1966). Our decision in the *Albright* case to the effect that sec. 2039(c) does not apply only to an amount subject to estate tax by virtue of sec. 2039(a) and (b) was reversed by the U.S. Court of Appeals for the Second Circuit in *Commissioner* v. *Estate of Albright*, 356 F. 2d 319. Respondent, in his reply to petitioner's final argument, states that he "does not concede that the operative effect of section 2039(c) is exclusive and that any amounts properly excluded thereunder, are excludable notwithstanding any other provisions of the Internal Revenue Code." However, he does not specifically argue that we should adopt the position of the Second Circuit in the *Albright* case.

Since we agree with respondent as to the inapplicability of sec. 2039(c)(3) to exclude any amount of the payments received by the trustees under decedent's will because of the benefits under the annuity contracts remaining unpaid at the date of decedent's death, under any view of the facts in this case, we do not consider it necessary to decide whether our position or the position of the Second Circuit in the *Albright* case was the correct interpretation of the law.

tioner argues that there is nothing in section 2039(c) which limits the exclusion available under that section to the "gross estate" of the employee "for whom the retirement annuity was purchased."

Respondent takes the position that the exclusion provided for in section 2039(c) is applicable only to the gross estate of a decedent who was the employee for whom the annuity contract was purchased. Respondent asserts that "the decedent" and "the employee" referred to in section 2039(c) are necessarily one and the same person and since decedent in this case was not an employee described in paragraph (3) of section 2039(c), her estate would not qualify for the exclusion provided for in section 2039(c).

The regulations amplifying section 2039(c) are silent as to whether the exclusionary provisions of section 2039(c)(3) apply to a decedent other than an employee for whom the annuity was purchased. We are unable to find any case in which the issue presented herein was considered. We have therefore reviewed the legislative history of section 2039 in an effort to glean the intent of Congress in enacting the provisions of that section.

Section 2039(c) was a new provision of the Internal Revenue Code of 1954. As originally enacted, it contained only paragraph (1) relating to a pension, stock bonus, or profit-sharing "plan," and paragraph (2) relating to a retirement annuity purchased pursuant to a "plan," which met the requirements of section 401(a), concerning qualification for exemption from taxation under section 501(a).[8] These paragraphs clearly treat the decedent and the employee as one and the same individual and specifically referred to the "decedent's separation from employment."

---

[8] As originally adopted sec. 2039(c) provided as follows:
SEC. 2039. ANNUITIES.
   (c) EXEMPTION OF ANNUITIES UNDER CERTAIN TRUSTS AND PLANS.—Notwithstanding the provisions of this section or of any provisions of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—
      (1) an employee's trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a) ; or
      (2) a retirement annuity contract purchased by an employer (and not by an employees' trust) pursuant to a plan which, at the time of decedent's separation from employment (by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a)(3).

\* \* \* \* \* \* \*

If such amounts payable after the death of the decedent under a plan described in paragraph (1) or (2) are attributable to any extent to payments or contributions made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bears to the total payments or contributions made. For purposes of this subsection, contributions or payments made by the decedent's employer or former employer under a trust or plan described in this subsection shall not be considered to be contributed by the decedent. This subsection shall apply to all decedents dying after December 31, 1953.

Paragraph (3) was added to section 2039(c) by the Technical Amendments Act of 1958. The report of the Senate Finance Committee explains the intended effect of paragraph (3) as follows:

*Estate-tax exclusion*

Subsection (e) of section 24 of the bill is a committee amendment to section 2039(c) of the 1954 Code, relating to the exclusion of certain annuities from the gross estate. Section 2039(c) presently provides an exclusion from the gross estate for the value of an annuity or other payments receivable by a beneficiary (other than the executor) under certain plans qualified under section 401(a). However, the exclusion does not apply to that part of the value of such annuity or other payment attributable to *payments or contributions made by the decedent* in the proportion that the total *payments or contributions made by the decedent* bears to the total payments or contributions made.

Subsection (e) of section 24 of the bill amends section 2039(c) by adding to that section a new paragraph (3). This amendment makes the gross-estate exclusion provided for in section 2039(c) applicable to the value of an annuity or other payment receivable under a retirement-annuity contract described in new paragraph (3). Such a contract is one purchased for an employee by an employer which is an organization referred to in section 503(b) (1), (2), or (3), and which is exempt from tax under section 501(a). The value of the retirement annuity amounts which are payable under such a contract after the decedent's death and which are attributable to *payments or contributions by the decedent* is not subject to the gross-estate exclusion in the proportion that *the decedent's total payments or contributions* bears to total payments or contributions made. This is the same rule that is applied presently under section 2039(c) to the value of amounts payable under plans now described in section 2039(c), and attributable to *the decedent's payments or contributions.* For purposes of retirement-annuity contracts described in new paragraph (3), contributions or payments made by *the decedent's employer or former employer* toward the purchase of such an annuity contract are not considered to be contributed by the decedent to the extent that such contributions or payments are excludable from gross income under section 403(b).

The amendments made by subsection (e) of section 24 are applicable with respect to estates of decedents dying after December 31, 1957.

[Emphasis supplied. S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 1074.]

The report of the Senate Finance Committee with respect to the addition of paragraph (3) to section 2039(c) continually refers to "payments or contributions made by the decedent," or "the decedent's total payments or contributions," and finally to "the decedent's employer or former employer." It is clear from this language that the decedent and employee are equated in the explanation of paragraph (3) by the Senate Finance Committee.

Paragraph (3) of section 2039(c) merely sets forth a type of retirement annuity which could qualify for exclusion from the gross estate under section 2039(c). The portion of subsection (c) following paragraphs (1), (2), and (3) contains the statutory language which describes that portion of a qualifying annuity as described in paragraphs (1), (2), and (3) of section 2039(c) which is excludable from the

gross estate. The language of this portion of the statute refers as does the report of the Senate Finance Committee to "payments or contributions made by the decedent," and "the decedent's employer or former employer." It is clear from the language of section 2039(c) considered as a whole that for the exclusion to apply to an annuity contract described in paragraph (3) the "decedent" must be "the employee" for whom the annuity contract was purchased. The interpretation of the statute sought by petitioner requires that paragraph (3) be read out of context with the other provisions of section 2039(c). Read in context section 2039(c)(3) is referring to an "employee" who is "the decedent," on whose estate the estate tax is being computed. The repetitious reference to "*the* decedent" indicates that the statute is addressing itself to the particular decedent who was the employee. The statute does not refer to "*a* decedent" which might connote its applicability to *any* decedent whether or not that decedent was the employee for whom the annuity was purchased. In our view it was never the intention of Congress in enacting the provisions of section 2039(c), including paragraph (3) thereof, that the exclusion from gross estate provided for therein would apply to any decedent except the deceased employee. We therefore conclude that petitioner is not entitled to exclude any portion of the value of the "supplementary" annuity contract from decedent's gross estate under section 2039(c).

We hold for respondent on the only issue presented for our decision but because of certain issues raised by the pleadings which have been disposed of by agreement of the parties,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

GOFFE, *J.*, concurs in the result.

---

FORRESTER, *J.*, concurring: Under the facts here, I am compelled to conclude that the contracts in issue were purchased by decedent after Robert's death and were entirely separate from Robert's contracts. It follows that the values of these contracts are includable in decedent's gross estate under section 2039 (a), (b), and (c) of the Internal Revenue Code of 1954.